K&S TOOL & DIE CORPORATION,
Plaintiff-Respondent,

v.

PERFECTION MACHINERY SALES, INC.,
Defendant-Appellant,†

INDUSTRIAL REBUILDING & MACHINING, INC.,
Defendant,

UNITED NATIONAL INSURANCE COMPANY, Intervenor.

Court of Appeals

*No. 2005AP2148. Submitted on briefs April 12, 2006.
—Decided June 22, 2006.*

2006 WI App 148

(Also reported in 720 N.W.2d 507.)

† Petition to review granted 9/11/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gregory P. Seibold*, of *Murphy Desmond S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael J. Hanrahan*, of *Fox, O'Neill & Shannon, S.C.*, Milwaukee.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. K&S Tool & Die Corporation claims that Perfection Machinery Sales, Inc. violated WIS. STAT. § 100.18,[1] "Fraudulent representations," by selling to K&S an 800–ton press that Perfection represented was a 1000–ton press. The jury agreed, finding that Perfection violated § 100.18 and that the violation caused K&S pecuniary loss in the amount of $306,000. Perfection appeals the judgment entered on the verdict, contending: (1) as a matter of law, K&S was not a member of "the public" within the meaning of § 100.18; (2) the circuit court erroneously instructed the jury on the meaning of "the public"; and (3) the evidence is insufficient to support the jury's finding that Perfection's untrue representation caused K&S pecuniary loss.

¶ 2. We conclude as follows: (1) Perfection was not entitled to a ruling as a matter of law—either at the close of K&S's evidence or at the close of all evidence—that K&S was not a member of "the public" under WIS. STAT. § 100.18; (2) the circuit court did not erroneously exercise its discretion in instructing the jury on the meaning of "the public"; and (3) there is sufficient

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

evidence to support the jury's findings that Perfection's untrue representation caused K&S to enter into the transaction with Perfection and that K&S suffered monetary loss as a result of a violation of § 100.18. Accordingly, we affirm the judgment.

## BACKGROUND

¶ 3. K&S is a Wisconsin corporation with sixty-nine employees that creates metal parts and dies. Production stamping is one process K&S uses to create metal parts. This process uses a punch press and a die to stamp either flat or coiled pieces of steel into metal parts. In 2000, Thomas Klusken, the sole owner of K&S, determined that K&S could not profitably make a metal part for a customer with the press it had and needed a press with a 1000–ton pressing force. K&S began searching through brochures it had been sent from companies that sold used presses, but was unable to find what it needed.

¶ 4. Perfection was one of the companies that had sent K&S brochures and catalogs. Perfection is an Illinois corporation in the business of selling used industrial machinery to commercial clients nationwide. It has its own inventory of machines but will sometimes look for a machine a customer needs that is not in its inventory.

¶ 5. Klusken contacted Perfection and spoke to Jason Broderick, a sales representative, telling him that K&S needed a 1000–ton press with certain features. Perfection did not have in its inventory a 1000–ton press with all the features K&S was looking for and Broderick agreed to look around to see if he could find one. Broderick subsequently called Klusken to say that he had found two 1000–ton presses in Michigan. On May 24, 2000, Broderick sent Klusken a fax on Perfection letterhead beginning with the form language

"Gentlemen: We are pleased to offer for your consideration . . ." followed by "TWO (2) 1000 TON CLEARING STRAIGHT SIDE PRESSES," and the model and serial numbers of the two presses. This document gave numerical data on various features and functions of the presses and listed the price for each press, followed by the statement "Each As Is Loaded." Below the price appeared this sentence: "SPECIFICATIONS ARE APPROXIMATE ONLY, INTENDED SOLELY AS A GUIDE AND ARE NOT BINDING."

¶ 6. K&S hired another company, Industrial Rebuilding Machining, Inc., to go to Michigan to inspect the presses, both of which were in a dismantled state. Industrial Rebuilding recommended one as the better press to rebuild, and K&S told Perfection it wanted to purchase that press. Perfection sold that press to K&S. Industrial Rebuilding rebuilt the press in its own shop, then installed it at K&S's plant. However, when K&S began using the press for the intended project, the press did not make the metal part in one hit, as K&S anticipated a 1000–ton press would. After unsuccessful efforts by K&S to make adjustments to the press, K&S called the press's manufacturer and learned that the press was actually an 800–ton press. K&S continued to use the press to produce the part for the customer, but three hits were needed to successfully produce the part.

¶ 7. K&S filed a complaint against Perfection,[2] asserting a number of claims. However, the Wis. Stat. § 100.18 claim was the only claim that went to trial.[3]

---

[2] K&S also alleged claims against Industrial Rebuilding, but those were not part of the trial and are not relevant to this appeal.

[3] The other claims were dismissed based on the forum selection clause in the terms and conditions of sale; that clause made Illinois the proper forum for suit.

¶ 8. As part of K&S's case, Klusken testified that prior to contacting Perfection about a 1000–ton press, K&S had regularly received catalogs and brochures from Perfection advertising the machines it had for sale, and K&S had contacted Perfection a number of times in the past to inquire about its machines and ask for quotes. K&S had previously purchased one piece of machinery from Perfection in 1996. Klusken called Perfection about a 1000–ton press because he had dealt with Perfection before and knew it was a major dealer.

¶ 9. After the close of K&S's evidence, Perfection moved to dismiss on two grounds. First, it argued that there was no evidence that the May 24, 2000 fax caused K&S to buy the press, because K&S had hired Industrial Rebuilding and relied on its inspection. The court denied this motion, concluding that, based on the evidence presented by K&S, the issue of causation was a jury question. Second, Perfection argued that the evidence showed that K&S and Perfection had a pre-existing relationship and therefore K&S was not a member of "the public" under Wis. Stat. § 100.18. The circuit court took this issue under advisement. It explained that its tentative conclusion was that the question whether K&S was a member of "the public" under § 100.18 was a question of law, but it intended to ask the jury this question so the parties "have that protection." When Perfection renewed these motions at the close of its evidence, the court made the same rulings.

¶ 10. The special verdict given to the jury asked the following questions:

1. Was [K&S] a member of the "public" under § 100.18 of the Wisconsin Statutes?

2. Regardless of whether or not K&S was a member of the public, [d]id Perfection Machinery Sales, Inc. violate § 100.18 of the Wisconsin Statutes?

305

Only if you answered Question #2 "Yes", answer Question #3.

3. Did the untrue representation cause [K&S] to enter a transaction with Perfection Machinery Sales, Inc.?

Regardless of how you answered Questions 1–3, answer Question #4.

4. What monetary loss, if any, did [K&S] sustain as a result of a § 100.18 violation?

All twelve jurors answered the first three questions "yes," and entered damages in the amount of $306,000 in response to the fourth question.

¶ 11. In post-verdict motions, Perfection renewed its motion for a directed verdict and, as alternatives, requested that the court change the jury's answer to the question whether K&S was a member of "the public" under WIS. STAT. § 100.18 to "no," or grant a new trial based on insufficient evidence to support the jury's verdict on this issue. Perfection also requested that the answer to question 3, on causation, be changed to "no" or a new trial be granted because, it asserted, there was no credible evidence that K&S relied on its representation in the May 24, 2000 fax and, thus, no evidence that the representation caused K&S's injury. The circuit court denied these motions.

## DISCUSSION

¶ 12. On appeal, Perfection makes three challenges to the judgment against it: (1) the circuit court should have decided, as a matter of law, that K&S was not a member of "the public" under WIS. STAT. § 100.18 instead of submitting the question to the jury; (2) even if the court properly submitted the question to the jury,

its instruction on "the public" was erroneous; and (3) the evidence is insufficient to support the jury's finding that Perfection's untrue representation caused pecuniary loss to K&S.

I. K&S as Member of the Public—Perfection's Motions to Dismiss and for Directed Verdict

¶ 13. WISCONSIN STAT. § 100.18 provides, as relevant here, that

No person ... [or] corporation ... with intent to sell ... any ... merchandise ... offered ... to the public for sale ... or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase ... of any ... merchandise ... shall make, publish, disseminate, circulate or place before the public ... an advertisement, announcement, statement or representation of any kind to the public relating to such purchase ... which ... contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

¶ 14. Perfection contends that the circuit court erred in denying its motion to dismiss at the close of K&S's evidence and in not granting a directed verdict at the close of all evidence because, as a matter of law, K&S was not a member of "the public" under WIS. STAT. § 100.18. According to Perfection, the undisputed evidence shows that K&S contacted Perfection because of prior dealings between them, initiated the transaction by asking Perfection whether it had a 1000–ton press, and then asked Perfection to help it find such a press. When Perfection agreed to do so, it asserts, a particular relationship arose between the two parties, and K&S was no longer a member of "the public."

¶ 15. K&S responds that its prior relationship with Perfection and the fact that it initiated the contact

with Perfection about the 1000–ton press do not, under the case law, prevent it from being a member of "the public" under WIS. STAT. § 100.18.

¶ 16. We consider first the court's denial of Perfection's motion to dismiss at the close of K&S's case. A motion challenging the sufficiency of the evidence at the close of the plaintiff's case may not be granted unless, considering all the evidence in the light most favorable to the plaintiff, there is no credible evidence to sustain a verdict in the plaintiff's favor. *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753 (1995). This is the standard both for the circuit court and the appellate court reviewing the circuit court's ruling. *Id.* "Because a circuit court is better positioned to decide the weight and relevancy of the testimony, an appellate court 'must also give substantial deference to the trial court's better ability to assess the evidence.' " *Id.* at 388–89 (citation omitted).

¶ 17. We agree with Perfection that K&S's evidence on "the public" issue was Klusken's testimony, which we have summarized above in paragraph 8. In order to determine whether the circuit court properly denied Perfection's motion to dismiss based on that evidence, we must construe WIS. STAT. § 100.18 in light of the relevant case law and apply that legal standard. The construction of a statute in this context presents a question of law, which we review de novo. *See Bonn v. Haubrich*, 123 Wis. 2d 168, 171–72, 366 N.W.2d 503 (Ct. App. 1985).

¶ 18. There are three cases that address the meaning of "the public" in WIS. STAT. § 100.18. The seminal case is *State v. Automatic Merchandisers of Am erica , Inc.*, 64 Wis. 2d 659, 221 N.W.2d 683 (1974). The

308

issue there was whether § 100.18(1) "applies to oral representations made in private conversations to prospective purchasers of the defendants' products." *Id.* at 662. The facts were taken from the complaint, since the issue was raised on a motion to dismiss. *See i d.* at 660–61. The defendants, sellers of vending machines and distributorship programs, placed ads in newspapers. *Id.* at 660. When people responded to the ads, the defendants contacted them in their homes, where the defendants made oral representations and gave promotional materials. *Id.* The complaint alleged that some of the promotional materials and oral representations were untrue, deceptive, and misleading. *Id.*

¶ 19. The supreme court in *Automatic Merchandisers* first rejected the defendants' argument that WIS. STAT. § 100.18 was limited to media advertising, concluding that the legislature intended that Wisconsin residents be protected from "any untrue, deceptive or misleading representations made to promote the sale of a product." *Automatic Merchandisers*, 64 Wis. 2d at 663. The court then addressed the argument that the statute applies only where "dissemination to the public" occurs and not where statements are made privately to prospective purchasers. *Id.* The court observed that "[w]hile the representations were made privately to prospective purchasers their only relationship to the defendants was that they had responded to advertisements in the classified sections of newspapers." *Id.* In concluding that these prospective purchasers were members of "the public" within the meaning of the statute, the court found applicable a line of cases discussing the meaning of "the public" in public utility cases. *Id.* at 663–64. The court stated:

> [These] cases recognize the difficulty of defining "public" and the necessity of looking to each case's own

309

peculiar facts and circumstances. *Cawker v. Meyer* (1911), 147 Wis. 320, 326, 133 N.W. 157. The cases recognize that the number of people involved is not controlling and that "the public" may be only one person. [Citation omitted.] The important factor is whether there is some particular relationship between the parties. *Cawker v. Meyer*, *supra*, 147 Wis. at page 326.

Here there is no peculiar relationship between the defendants and the prospective purchasers which would distinguish the prospective purchaser from "the public" which the legislature intended to protect. These people simply responded to the defendants' notices in the classified sections.

The use of the term "the public" does not mean that the statements be made to a large audience. As has been noted, in some situations one person can constitute the public. In sec. 100.18(1), Stats. this interpretation of "public" is the appropriate one as can be seen by the use of it in the phrase "with intent to induce the public in any manner to enter into any contract or obligation." Obviously, the use of "public" here contemplates the individual action of one member of the public. Similarly, "the public" in the phrase "cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public" does not require mass dissemination of the assertion, representation or statement. The fact that the alleged untrue, deceptive or misleading representations were made individually to different members of the public is not controlling.

*Id.* at 664–65.

■

¶ 20. While *Automatic Merchandisers* does not define "the public" except in terms of what it is not—"a particular relationship" between the parties to the

transaction—and while "a particular relationship" is also not defined, the case does provide a framework for analyzing whether a plaintiff is a member of "the public" under WIS. STAT. § 100.18. First, it is evident from the court's comments that it views the legislature as intending a broad meaning of "the public." Second, in deciding whether "a particular relationship" takes a prospective purchaser outside the broad category of "the public," the inquiry is whether there is a relationship "between the defendant[] and the prospective purchaser[] which would distinguish the prospective purchaser[] from 'the public' which the legislature intended to protect." *Automatic Merchandisers*, 64 Wis. 2d at 664. In other words, a prospective purchaser is a member of "the public" unless that person's relationship to the defendant is such that it is evident the legislature did not intend to protect a person in that relationship "from any untrue, deceptive, or misleading representations made to promote the sale of a product." *Id.* at 663.

¶ 21. The second case, *Bonn*, 123 Wis. 2d 168, applies the holding of *Automatic Merchandisers* to a different fact situation. The facts in *Bonn* were that, after the defendant made an initial phone call to the plaintiff inquiring whether he was interested in investing in gemstones, the defendant met with the plaintiff in the plaintiff's home and made misrepresentations there, which, the plaintiff asserted, caused him to purchase a stone. *Id.* at 170–71. The issue in *Bonn* was whether the plaintiff had a claim under WIS. STAT. § 100.18 even though the chain of events resulting in the misrepresentation did not arise from media advertising, but from the defendant's phone call. *Id.* at 170–71. In concluding that the plaintiff did have a claim, we relied on *Automatic Merchandisers*, which we read as holding that § 100.18(1) "applied to oral repre-

sentations made in private conversations to prospective purchasers of the defendants' products." *Id.* at 172 (citing *Automatic Merchandisers*, 64 Wis. 2d 659). We rejected the contention that, because the plaintiff had not initially responded to an advertisement, he was not protected, concluding that "[t]he fact that the alleged untrue, deceptive or misleading representations were made to [the plaintiff] as part of a sales promotion is sufficient to afford him protection under sec. 100.18(1)." *Id.* at 173. In a footnote we cited *Automatic Merchandisers* for the proposition that "the public" in § 100.18(1) "does not mean that the statements must be made to a large audience," and that "[the plaintiff in the case before us] alone constitutes 'the public' under this section." *Id.* at 173 n.4.

¶ 22. The third case, *Kailin v. Armstrong*, 2002 WI App 70, ¶¶ 43–44, 252 Wis. 2d 676, 643 N.W.2d 132, identified a contractual relationship as a "particular relationship" that made the plaintiffs not members of the public. This case involved a commercial real estate transaction. *Id.*, ¶ 1. The plaintiffs there contended that they had submitted evidence that the vendor made misrepresentations to them both before and after their counteroffer to purchase was accepted, and they were therefore entitled to a trial on their WIS. STAT. § 100.18 claim. *Id.*, ¶¶ 5–12. We agreed with them that they were entitled to a trial regarding certain representations made to them before their counteroffer to purchase was accepted, but we concluded that any representations made to them after that date were not covered by § 100.18 because those latter representations were not made "to the public." *Id.*, ¶ 43. We explained:

> We recognize that 'the public' in WIS. STAT. § 100.18 does not necessarily mean a large audience, and a statement made to one person may constitute a statement made to

> "the public" under this statute. [Citing *Bonn.*] However, the important factor in defining "the public" is "whether there is some particular relationship between the parties." [Citing *Automatic Merchandisers.*] Once the contract was made, [the plaintiffs] were no longer 'the public' under the statute because they had a particular relationship with [the defendant]—that of a contracting party to buy the real estate that is the subject of his post-contractual representation. The purpose of § 100.18 is aimed at untrue, deceptive or misleading statements made to induce certain actions. [Citing *Bonn.*] . . . .Statements made by the seller after a person has made a purchase or entered into a contract to purchase logically do not cause the person to make the purchase or enter into the contract.

*Id.*, ¶ 44.

¶ 23. Applying the above case law, chiefly the framework of analysis provided by *Automatic Merchandisers*, we conclude that Klusken's testimony does not establish a "particular relationship." Essentially, K&S received catalogs and brochures from Perfection, previously made inquiries about products and prices, and purchased one product from Perfection four years earlier. These facts describe a common relationship between a great number of prospective purchasers and sellers—mailings or advertisements of one sort or another and occasional inquiries and purchases. We can see no basis in the statute itself or the case law for concluding that the legislature intended that a purchaser of a particular product lose the protection of Wis. Stat. § 100.18 solely because the purchaser had previously made inquiries about products and purchased products from the seller.

■

¶ 24. Perfection also argues that K&S is not a member of "the public" because it initiated the contact

with Perfection regarding a 1000–ton press. Perfection reads *Automatic Merchandisers* to support this distinction. We do not agree that it does. It is true that in both *Automatic Merchandisers* and *Bonn* the seller initiated the communication with the prospective purchaser—in the former case, through newspaper advertisements that apparently asked for a response, and in the latter case, through a phone call. However, nothing in either opinion suggests that these facts constitute part of the legal standard for assessing whether a plaintiff is a member of "the public." Rather, in both cases the courts make clear that those initial communications by the seller did not contain the actionable representations, and, nonetheless, later representations to the individuals in their own homes were actionable because they were untrue, deceptive, or misleading. *Automatic Merchandisers*, 64 Wis. 2d at 665; *Bonn*, 123 Wis. 2d at 173–74.

¶ 25. We can see no logic in affording protection to prospective purchasers only when the seller initiates the communication that leads to the purchase, given that under *Automatic Merchandisers* and *Bonn* the actionable representation need not be in that initial communication. By way of example, Perfection's construction of the statute would afford protection to a purchaser of a product at a store when the seller misrepresents the product with intent to sell the product, if the purchaser came into the store because of an advertisement—even though the advertisement was for a different product and contained no misrepresentation. However, Perfection's construction would not afford protection to a purchaser at the store who was induced by the same misrepresentation made with the same intent to purchase the same product, if this purchaser came into the store because he or she had

heard about the store in other ways and knew the store carried the type of products he or she was looking for. Yet, the conduct of the seller that the legislature intends to discourage and the harm to the purchaser as the result of that conduct are the same in both situations.

¶ 26. We do not agree with Perfection that the following reference in *Automatic Merchandisers* to "sales promotions" supports its position: "Sec. 100.18(1), Stats., is aimed at protecting the public from untrue, deceptive or misleading representations *made in sales promotions.*" 64 Wis. 2d at 665 (emphasis added). When read in the context of the entire opinion, "sales promotions" does not mean, as Perfection suggests, a particular method of advertising products. Elsewhere in the opinion the court uses an alternative term in an otherwise identical sentence to convey the purpose of Wis. Stat. § 100.18(1): " . . . to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made *to promote the sale of a product.*" *Id.* at 663 (emphasis added). In these sentences, the phrases "made in sales promotions" and "made to promote the sale of a product" both refer to the requirement of § 100.18 that the untrue, deceptive, or misleading representation must be made "with intent to sell . . . or with intent to induce . . . ." They are not a limitation on who is a member of "the public." Based on the evidence K&S presented, a reasonable jury could certainly determine that the untrue representation in the fax Broderick sent to Klusken was made with the intent to sell one of the two presses described in the fax.

¶ 27. We conclude the evidence K&S presented did not establish, as a matter of law, that K&S was not a member of "the public" under Wis. Stat. § 100.18(1). The circuit court therefore properly denied Perfection's

motion to dismiss at the close of K&S's case. We recognize that there remains a question whether, if the facts relevant to this issue are indeed undisputed, as Perfection contends, the circuit court should have decided as a matter of law that K&S *was* a member of the public rather than presenting this question to the jury. This apparently was K&S's position in the circuit court. However, on appeal K&S argues that the circuit court was correct in presenting the question to the jury. Rather than take up an argument that neither party is making, we confine our analysis to the arguments the parties are making. Accordingly, we affirm the circuit court's denial of Perfection's motion to dismiss on "the public" question, without deciding whether the court should have decided this question as a matter of law in K&S's favor.

¶ 28. Perfection's argument that the circuit court should have directed a verdict in its favor on "the public" issue after the close of all evidence is the same argument it makes in challenging the denial of the motion to dismiss at the close of K&S's case. For the reasons we have just explained in affirming the denial of the motion to dismiss, we conclude the circuit court properly denied the motion for a directed verdict at the close of all evidence.[4]

II. Member of Public—Jury Instruction

¶ 29. Perfection contends that, even if the circuit court did not err in permitting the question whether K&S was a member of "the public" under WIS. STAT.

---

[4] Because of this conclusion it is unnecessary to address the parties' dispute on whether testimony presented as part of Perfection's case is evidence that Klusken contacted Broderick because of a specific advertisement on a press, even though that was not why Klusken testified he contacted Perfection.

§ 100.18 to go to the jury, it erroneously instructed the jury on the meaning of "the public." The court inserted the italicized language into the first paragraph of the standard Wis JI—Civil 2418 instruction as follows:

> To constitute an untrue, deceptive, or misleading representation in this case, there are three elements which must be proved by K&S Tool & Die Corporation.
>
> First, Perfection Machinery Sales, Inc., made, published, or placed before one or more members of the public an advertisement, announcement, statement, or representation concerning the sale of a press. An advertisement, announcement, statement, or representation can be oral or written. It can appear in a newspaper, magazine, or other publication or it can be made by telephone or over radio or television. It may take the form of a notice, handbill, circular, pamphlet, letter, or any other means of disseminating it. It may also take the form of a face-to-face communication. *The public does not include parties with pre-existing "particular relationships." Determination of whether or not parties had a "particular relationship" includes, without limitation, consideration of whether the parties had entered into a contract and the number of persons to whom the alleged false advertising was given.*

¶ 30. Perfection had proposed this instruction:

> In order to find in favor of K&S, K&S must prove that it was a member of the "public" within the meaning of Wis. Stat. § 110.18(1). In order for a plaintiff to be a member of the "public" within the meaning of the statute, there must not have existed any pre-existing "particular relationship" between K&S and Perfection. A particular relationship between the parties is established [by] "an ongoing business relationship which led [K&S] to contact [Perfection] for assistance in locating" the press at issue. If you find that K&S contacted Perfection based upon a pre-existing business relationship, then you must find that K&S is not a member of

317

the "public" within the meaning of the statute, and is not entitled to relief under the statute.

¶ 31. The court did not give Perfection's proposed instruction because it agreed with K&S that the published case law did not support it. Perfection objected to the italicized language in the standard instruction because, Perfection contended, it lacked detail on "particular relationship" that would direct the juror's attention to the prior contacts between the parties in this case and to who initiated this transaction. K&S objected to any addition to the standard instruction. In spite of the parties' objections, the court decided to add the italicized language because, in its view, that language was consistent with published case law and the jury needed some guidance to answer the question whether K&S was a member of the public. The court advised Perfection's counsel that it was free to argue to the jury that the parties had a "particular relationship" based on the facts Perfection considered relevant.

¶ 32. On appeal, Perfection's objection to the court's supplemental language in the instruction is that it encouraged the jurors to conclude that, absent a pre-existing contractual relationship, K&S was a member of the public. According to Perfection, the language "without limitation" does not cure this defect because it implies that other factors are in addition to, not a substitute for, a contractual relationship, and no other factors are mentioned except the number of persons.[5] Perfection also argues that the instruction is inconsistent with the statement in *Automatic Merchandisers*

---

[5] K&S contends that Perfection did not make this objection in the circuit court and therefore has waived it. We are satisfied that Perfection's arguments in the circuit court in favor of its proposed instruction and in opposition to the one the court gave adequately preserved this objection.

that "[t]he cases [applying the term 'to the public' in the context of public utilities] recognize the difficulty of defining 'public' and the necessity of looking to each case's own peculiar facts and circumstances." 64 Wis. 2d at 664. As we understand this argument, Perfection is asserting that *Automatic Merchandisers* requires that the jury's attention be directed by the instruction to the facts and circumstances of the relationship between the parties in this case.

¶ 33. The circuit court has broad discretion in instructing a jury. *Fischer v. Ganju*, 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). We affirm the circuit court's choice of jury instructions if the instructions accurately state the law and comport with the facts of record. *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 42, 281 Wis. 2d 173, 696 N.W.2d 194. Even if we conclude that an instruction is in error, we do not reverse for a new trial unless the error was prejudicial. *Fischer*, 168 Wis. 2d at 849–50; *Arents*, 281 Wis. 2d 173, ¶¶ 42–43. "An error is prejudicial if it probably and not merely possibly misled the jury. If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Fischer*, 168 Wis. 2d at 849–50 (citations omitted).

¶ 34. We conclude the court did not erroneously exercise its discretion in instructing the jury as it did. To the extent Perfection is arguing that the court erred in not giving the instruction Perfection proposed, the court properly exercised its discretion in declining to give it. An "ongoing business relationship" is a vague term, hardly a "particular relationship," and could encompass a contractual relationship as well as making occasional inquiries about products and occasional purchases. We have already concluded that the published

case law does not support the principle that a prospective purchaser is not a member of "the public" simply because he or she has made prior inquiries about the defendant's products and prior purchases from the defendant.

¶ 35. As for the instruction the court did give, we do not agree with Perfection that the court erred in referring to a contractual relationship without also instructing the jury that a non-contractual relationship could remove a person from the category of "the public." In the absence of published case law identifying a specific non-contractual relationship that removes a person from the category of "the public" under WIS. STAT. § 100.18(1), the court could reasonably decide that it was better not to be more specific. Perfection did not object to the reference to "the number of persons to whom the alleged false advertising was given." We do not agree with Perfection that the "without limitation" language served no purpose. This language informed the jurors that they could consider other facts and circumstances in deciding whether the parties had a "particular relationship." Indeed, in closing, Perfection's counsel pointed to all the evidence that, in Perfection's view, constituted a "particular relationship" between the parties.

¶ 36. We also reject Perfection's argument that *Automatic Merchandisers* required the instruction to be more specific than it was. The reference to "each case's own peculiar facts and circumstances" in that case was not addressing jury instructions; and, as we have already stated, the instruction the court gave here allowed the jury to consider the facts of the relationship between K&S and Perfection.[6]

---

[6] Our conclusion that the circuit court did not erroneously exercise its discretion in giving the challenged instruction is

## III. Sufficiency of Evidence on Causing Pecuniary Loss

¶ 37. Perfection argues the evidence is insufficient to support the jury's answers to special verdict questions 3 and 4—that Perfection's untrue representation caused K&S to enter into a transaction with Perfection and caused K&S monetary loss. Perfection presents its argument in two parts: first, the evidence is insufficient to show that K&S reasonably relied on the representation in the May 24, 2000 fax that the two presses were 1000–ton presses; and, second, the evidence shows that, in making the purchase, K&S relied on Industrial Rebuilding's recommendation and not Perfection's statement on tonnage[7] in the fax.

¶ 38. Perfection's argument on reasonable reliance raises a threshold issue whether the instruction

based on our rejection of the two arguments Perfection directs at the instruction. We do not hold that the instruction is in all other respects an accurate statement of the law. In particular, K&S objected in the circuit court to the portion "consideration of . . . the number of persons to whom the alleged false advertising was given" because it suggests that the number of persons affects whether a representation is made to "the public" and, according to K&S, this is inconsistent with *State v. Automatic Merchandisers of Am erica , Inc.*, 64 Wis. 2d 659, 664, 221 N.W.2d 683 (1974). We also observe that, to the extent the supplemental language suggests that a representation about a product or service made to a person who had already contracted to buy that product or service could in some cases be a representation to "the public," the language may be inconsistent with *Kailin v. Armstrong*, 2002 WI App 70, ¶¶ 43–44, 252 Wis. 2d 676, 643 N.W.2d 132. We do not address these issues, but only the objections argued by Perfection on appeal.

[7] The witnesses use the term "tonnage" to describe the pressing force, in tons, of the presses, and we therefore do so. In this context "tonnage" does not mean the weight of the presses.

given on causation requires that K&S prove reasonable reliance on the untrue representation in order to prove that the representation caused it monetary loss. We address this issue in the first subsection below and conclude the instruction does not require reasonable reliance. In the second subsection, we analyze the evidence in light of the causation instruction given and conclude it is sufficient. In that context, we address Perfection's arguments regarding K&S's reliance on Industrial Rebuilding's recommendation.

A. *Reasonable reliance is not required for causation of pecuniary loss.*

¶ 39. Perfection argues that there is insufficient evidence that K&S reasonably[8] relied on the representation in the fax that the presses were 1000–ton presses in deciding to purchase one of the presses. K&S responds by pointing to evidence that, in its view, shows that K&S did reasonably rely on that representation, apparently accepting the premise that, in order for a misrepresentation to cause a monetary loss under Wis. Stat. § 100.18, the purchaser must reasonably rely on it. However, the jury instruction on causation does not suggest that K&S must prove reasonable reliance, and neither the statute nor the case law supports such a requirement.[9]

---

[8] Perfection uses "justifiably" interchangeably with "reasonably" in this context. We use only "reasonably."

[9] In the context of this argument, Perfection asserts the jury should have been instructed on reliance and it refers to a proposed instruction it submitted:

> In order to find in favor of K&S, you must also find that K&S proved that its loss was caused by the statement in question. In

¶ 40. The jury was instructed on causation in accordance with Wis JI—Civil 2418 as follows:

> determining whether or not this is true, you must determine whether or not K&S relied on the statements in the proposal. If you find that K&S undertook its own investigation of the press, rather than relying on the statements regarding the press in the proposal, then you must find that K&S did not rely upon the proposal, and cannot satisfy this element of its claim.

However, Perfection does not provide a record cite to show that it brought this proposed instruction to the attention of the circuit court during the instruction conference or objected to the standard instruction on causation that the court proposed to give because the standard instruction did not address reliance. Our own review of the record does not disclose that Perfection did either. Therefore, Perfection has waived its objection on this basis. *See* Wis. Stat. § 805.13(3) and *State v. Schumacher*, 144 Wis. 2d 388, 409, 424 N.W.2d 672 (1988) (failure to object to jury instructions at pretrial conference waives right to object to instructions to the court of appeals).

In the event that we have overlooked something in the record and Perfection has not waived this objection, we add our conclusion that the court did not erroneously exercise its discretion in not giving Perfection's proposed instruction on reliance and in giving the standard instruction on causation. The instruction traces the language of Wis. Stat. § 100.18(11)(b)2 and was cited in *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 38, 270 Wis. 2d 146, 677 N.W.2d 233. *See* paragraphs 42–43 above.

We also observe that, to the extent Perfection is challenging the standard instruction the court gave on causation because it does not expressly require *reasonable* reliance, that objection, too, has been waived: Perfection points to no point in the record where it objected to the standard instruction on this basis and we have found none. In spite of this waiver, we address whether the instruction on causation that was given requires reasonable reliance because both parties appear to believe that it does, and it is necessary to decide this question in order to determine whether the evidence was sufficient based on the instruction given.

323

The third element: K&S Tool & Die Corporation sustained a monetary loss as a result of the representation. In determining whether K&S Tool & Die Corporation's loss was caused by the representation, the test is whether K&S Tool & Die Corporation would have acted in its absence. Although the representation need not be the sole or only motivation for K&S Tool & Die Corporation's decision to buy the press, it must have been a material inducement. That is, the representation must have been a significant factor contributing to K&S Tool & Die Corporation's decision.

¶ 41. The instruction does not say or suggest that reasonable reliance is part of the test for causation: the test under the standard instruction for determining whether a representation caused pecuniary loss is "[w]hether plaintiff would have acted in its absence." *Madcap I, LLC v. McNamee*, 2005 WI App 173, ¶ 36, 284 Wis. 2d 774, 702 N.W.2d 16 (quoting Wis JI—Civil 2418). Certainly this test, like the concept of cause itself, means that the plaintiff relied on the representation, but it does not require reasonable reliance. The jury instruction refines the meaning of "cause" by requiring that the representation be a "material inducement" or "significant factor," but the concept of reasonable reliance is simply not there.

¶ 42. The standard instruction given is consistent with the statute and the case law. Wisconsin Stat. § 100.18 does not require reasonable reliance on the misrepresentation. Section 100.18(1) describes conduct that is prohibited and § 100.18(11)(b)2 provides:

Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees

may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01 (6).

The supreme court's most recent statement of the elements of a claim under § 100.18 does not contain reasonable reliance but instead tracks the statutory language on the causation of pecuniary loss element. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233 ("[T]he plaintiff has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact.' WIS. STAT. § 100.18(1); *see also* Wis JI—Civil 2418").

■

¶ 43. Most of the cases Perfection cites in support of its position that reasonable reliance is required do not address claims under WIS. STAT. § 100.18 but address claims for common law intentional misrepresentation.[10] However, § 100.18 creates a cause of action that is distinct from common law misrepresentation claims. *Kailin*, 252 Wis. 2d 676, ¶¶ 40–41. While *Tim Torres Enterprises, Inc. v. Linscott*, 142 Wis. 2d 56, 70, 416 N.W.2d 670 (Ct. App. 1987), does address a claim under § 100.18, it uses the term "actual . . . reliance," not "reasonable reliance"; "actual . . . reliance" was the term the circuit court there used in instructing the jury.[11]

---

[10] Perfection cites: *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 734, 456 N.W.2d 585 (1990); *Household Finance Corp. v. Christian*, 8 Wis. 2d 53, 56–57, 98 N.W.2d 390 (1959); *W.H. Hobbs Supply Co. v. Ernst*, 270 Wis. 166, 70 N.W.2d 615 (1955); and *Darlington v. J.L. Gates Land Co.*, 151 Wis. 461, 464, 138 N.W. 72 (1912); *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131 (Ct. App. 1982).

[11] Apparently *Tim Torres Enterprises, Inc. v. Linscott*, 142 Wis. 2d 56, 416 N.W.2d 670 (Ct. App. 1987), was tried before the standard jury instruction Wis JI—CIVIL 2418 was developed.

Finally, *Madcap I , LLC v. McNamee,* also a § 100.18 case, lends no support to a requirement of "reasonable" reliance. *Madcap,* 284 Wis. 2d 774, ¶ 36. In the paragraph to which Perfection cites, we discuss and apply WIS JI—CIVIL 2418 on cause and do not use the term "reliance," let alone "reasonable." *Id.* Thus, the cases on which Perfection relies do not support the proposition that a plaintiff asserting a claim under § 100.18 must prove that he or she reasonably relied on the representation.

¶ 44. We conclude that the jury instruction given by the court does not require the jury to find that K&S reasonably relied on the representation in the fax that the two presses were 1000–ton presses. We further conclude this is a correct view of the law.

¶ 45. However, the unreasonableness of a purchaser's reliance on a representation may be relevant to whether the purchaser in fact relied, or—in the words of the instruction—whether the purchaser would have "acted in its absence." That is, evidence that reliance would be unreasonable may lead a jury to conclude that the purchaser did not in fact rely on the representation but would have made the purchase without it. Therefore Perfection's argument that the evidence shows that K&S unreasonably relied on the tonnage representation in the fax is properly considered in analyzing on sufficiency of the evidence on causation. Accordingly, we address this argument in the next section.

B. *The evidence is sufficient to establish causation of pecuniary loss.*

¶ 46. In reviewing the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the jury's verdict, and we sustain the jury's

verdict if there is any credible evidence to support it. *Morden v. Continental AG*, 2000 WI 51, ¶¶ 38–39, 235 Wis. 2d 325, 611 N.W.2d 659. This is because the jury is to judge the credibility of witnesses and determine the weight of their testimony. *Id.*, ¶ 39. Where the evidence gives rise to competing reasonable inferences, we accept the inferences reached by the jury. *Id.* In addition, we search the record for evidence to uphold the jury's findings, and, "if there is any credible evidence, under any reasonable view, that leads to an inference supporting the jury's finding, we will not overturn that finding." *Id.*, ¶ 38. This is particularly true where the circuit court has approved the jury's verdict, as the circuit court did in this case. *Id.*, ¶ 40.

¶ 47. There is no dispute in the evidence that K&S wanted a 1000–ton press, Klusken told Broderick K&S wanted a 1000–ton press, and Broderick said he would look for a 1000–ton press. There is also no dispute that Broderick's fax prominently described the two presses he located as 1000–ton presses. In addition, Klusken testified that he relied on this representation in the fax in deciding to purchase one of the two presses. He testified that if the fax had described the two presses as 800–ton presses, he would have made no further inquiries about them and would not have hired anyone to inspect them; if the fax had described the two presses without any information about their pressing force, he would not have sent anyone to inspect them.

¶ 48. As noted in the preceding subsection, Perfection contends the evidence shows that K&S's reliance on the tonnage representation in the fax was unreasonable. We analyze this evidence to determine whether it precludes a reasonable jury from deciding

327

that K&S purchased the press because of that representation. We conclude it does not.

¶ 49. First, Perfection refers to evidence that Klusken knew the presses were coming from another dealer and knew Broderick had not seen the presses and did not know much about them. Apart from the fact that this is not the most favorable way to view Klusken's testimony on what he thought Broderick knew about the presses,[12] a reasonable jury could decide that Klusken believed that Broderick knew the tonnage of the two presses he found, even though there might be other information about the presses Broderick did not know. Klusken had made clear to Broderick the importance of the press having a 1000–ton pressing force and Klusken testified he relied on that representation in the fax. In addition, Broderick testified that he expects Perfection's customers to rely on the specifications that Perfection provides them in quotations. There is no evidence that Broderick or anyone else from Perfection told K&S that the presses might not be 1000–ton presses.

¶ 50. Second, Perfection refers to these sentences on the fax: (1) "Each As Is Loaded"; (2) "SPECIFICATIONS ARE APPROXIMATE ONLY, INTENDED SOLELY AS A GUIDE AND ARE NOT BINDING"; and (3) in form language at the bottom: "This quotation is subject to terms and conditions of sale contained on the reverse side." The sentence regarding the "terms and conditions of sale" that Perfection relies on is contained in the "No warranty" paragraph: "It is the purchaser's responsibility to inspect the goods and to ascertain if

---

[12] Klusken also testified that he did not know whether Broderick had ever inspected the presses.

the specifications, descriptions, and condition . . . conform to the purchaser's requirement."

¶ 51. Klusken explained in his testimony why neither of the first two statements on the fax caused him to question the representation on the tonnage. Based on his experience in purchasing used equipment, he understood the sentence "Each As Is Loaded" to mean that the press had to be rebuilt and needed work, and "if there's something wrong with it . . . [K&S is] going to fix it." Klusken understood the sentence about specifications being approximate to refer to the numerical data describing the listed features and functions of the two presses; in his experience, these are not always exact, and they might vary by "an inch, sometimes 2, 3 inches." This testimony is supported by Broderick's testimony that he would not consider the difference between an 800–ton press and a 1000–ton press as approximate, but rather as a "definite difference."

¶ 52. As for the reference on the fax to Perfection's "terms and conditions of sale contained on the reverse side," a reasonable inference from the testimony and exhibits is that these were not on the reverse side of the fax Klusken received and were not provided K&S until Perfection sent its invoice, which was after K&S and Perfection had negotiated a price for the press and K&S had sent Perfection a purchase order. A reasonable jury could conclude that this language in the warranty paragraph on the back of the invoice did not convey to Klusken that Perfection did not know whether the press it was selling to K&S was a 1000–ton press as the fax represented.[13]

---

[13] Perfection discusses the disclaimers on the fax and in the terms and conditions of sale as facts relevant to K&S's reliance on the tonnage representation in the fax. We therefore discuss

¶ 53. We next address Perfection's argument that K&S did not rely on the tonnage representation in the fax, but relied only on Industrial Rebuilding's recommendation to inspect the presses. There is evidence that K&S relied on the report and recommendation of Industrial Rebuilding in deciding to purchase the press. However, it does not follow that the tonnage representation in the fax was not a "material inducement" or a "significant factor" in the decision to purchase: the jury instruction expressly states that the representation need not be "the sole or only motivation." *See Madcap*, 284 Wis. 2d 774, ¶ 36 (rejecting argument that evidence of inducement by one defendant to purchase the items means that there is no triable issue of fact whether another defendant's representations were a "material inducement").

¶ 54. We are satisfied that there is sufficient evidence that the tonnage representation on Perfection's fax was a material factor in inducing K&S to purchase the press, notwithstanding Industrial Rebuilding's recommendation.

¶ 55. As we have already noted, Klusken testified that he would not have made any further inquiries and would not have sent Industrial Rebuilding to inspect the presses if Perfection had informed him that it was offering for sale two 800–ton presses instead of two 1000–ton presses. He also testified he did not ask Industrial Rebuilding to investigate the tonnage of the presses because "as far as [he] knew, it was a 1000–ton press."

¶ 56. Industrial Rebuilding's employee, who inspected the press, testified that his inspection consisted

the disclaimers only in this context and do not consider whether they have any bearing on what representation Perfection is actually making, which is a distinct issue.

of looking at the mechanical condition of the press to see whether the bearings or gears appeared worn out or damaged. This inspection did not disclose to him that the press was an 800–ton press, not a 1000–ton press.

¶ 57. K&S's expert witness, an industrial machine repairer, testified that as a rebuilder or an inspector, the seller's specification sheet is the first thing he looks at before he considers traveling to inspect a press. In addition to the description that the press was a "1000–ton Clearing straight side press" on the fax, the model number, the figure "1000" which followed the model number, and the bed size—all of which were on the fax, indicated that the press was a 1000–ton press. This witness further testified that, if he went to look at the press described in the specification sheet in a disassembled state, nothing in the appearance of the press would lead him to conclude that it was not a 1000–ton press. As a professional rebuilder, he is engaged to "look at all the components and the condition, and particularly in areas that we know that are problem areas, particular machines, to verify that that's not going to create a real huge expense."

¶ 58. Based on this evidence, a reasonable jury could conclude that Klusken hired Industrial Rebuilding to inspect the press to determine its condition, that Industrial Rebuilding did not learn in its inspection that the press was not a 1000–ton press, and that Klusken therefore continued to believe that it was a 1000–ton press based on Perfection's representation in the fax. Viewing the evidence in this way, and considering it together with the evidence we have summarized in paragraph 47, a reasonable jury could find that the tonnage representation in the fax was a material inducement for K&S to purchase this press. Evidence that Industrial Rebuilding should have discovered in its

inspection that the press was an 800–ton press, or that Klusken could have contacted the manufacturer to verify the correct tonnage, does not make the evidence insufficient to support the jury's determination.

## CONCLUSION

¶ 59. The circuit court correctly concluded that Perfection was not entitled to a ruling as a matter of law—either at the close of K&S's evidence or at the close of all evidence—that K&S was not a member of "the public" under WIS. STAT. § 100.18. The circuit court did not erroneously exercise its discretion in instructing the jury on the meaning of "the public." Finally, there is sufficient evidence to support the jury's findings that Perfection's untrue representation caused K&S to enter into the transaction with Perfection and that K&S suffered monetary loss as a result of a violation of § 100.18. Accordingly, we affirm the judgment.

*By the Court.*—Judgment affirmed.