**UNIEK, INC., Plaintiff,**

v.

**DOLLAR GENERAL CORPORATION, Defendant.**

No. 06–C–311–C.

United States District Court,
W.D. Wisconsin.

Feb. 21, 2007.

Stephen E. Kravit, Kravit, Hovel, Krawczyk & Leverson, Milwaukee, WI, for Uniek, Inc.

Kendall W. Harrison, La Follette, Godfrey & Kahn, S.C., Madison, WI, Jeffrey C. Morgan, Troutman Sanders LLP, Atlanta, GA, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

From 1993 to 2005, plaintiff Uniek, Inc. distributed picture frames to defendant Dollar General Corporation, reaching $12 million in sales in 2005. After defendant chose another picture frame manufacturer as its primary supplier in 2006, plaintiff brought this action for damages, asserting claims for breach of contract, promissory estoppel, quantum meruit and a violation of Wis. Stat. § 100.18. The parties are of diverse citizenship and the amount in controversy is more than $75,000, providing a basis for jurisdiction under 28 U.S.C. § 1332.

Defendant has moved for summary judgment on plaintiff's claim under Wis. Stat. § 100.18, which prohibits fraudulent representations in certain business transactions. Defendant asserts three grounds for its motion: (1) its statements to plaintiff were not made to "the public," as

required by § 100.18; (2) the statute protects only buyers rather than sellers like plaintiff; and (3) plaintiff has not adduced any evidence that defendant made any representations that were false when made. I agree with defendant that plaintiff's relationship with defendant sufficiently distinguishes plaintiff from "the public" as that term is currently understood by the Wisconsin courts in the context of Wis. Stat. § 100.18(1). Accordingly, I will grant defendant's motion for summary judgment.

From the facts proposed by the parties and the record, I find that the following are undisputed.

## UNDISPUTED FACTS

Plaintiff Uniek, Inc. manufactures and supplies picture frames and other home decor products to retailers. Defendant Dollar General Corporation operates more than 8,000 convenience stores across the country. Plaintiff's state of incorporation and location of its principal place of business are Wisconsin; defendant's are Tennessee.

In 1993, plaintiff began distributing picture frames to defendant for sale in defendant's stores. From 1993 to 2004, defendant purchased picture frames from six or seven other vendors. Its purchases from plaintiff consisted of "closeout, end runs and discounted merchandise." There were as many as two years when plaintiff did not sell any merchandise to defendant; in other years, plaintiff's sales to defendant reached as high as $6,000,000.

Beginning in 1995, plaintiff designated an employee to manage its account with defendant. Representatives from plaintiff and defendant met every several months to discuss the account. In addition, plaintiff and defendant communicated in writing and over the telephone about issues such as the selection of picture frames that defendant should carry and discounts and promotional merchandise available to defendant.

In November 2004, defendant asked plaintiff to "present its vision for supplying a complete frame assortment to [defendant] as the core supplier." Plaintiff complied and became defendant's core supplier of picture frames for 2005. The parties signed a document called "Uniek/Dollar General 2005 Planogram Agreement Letter of Understanding." Under a section titled "Overview," the letter states:

> Uniek, Inc. will supply Dollar General an 8 ft planogram to roll out at the end of April 2005 to approximately 7,430 stores and all seven DC's. The program will begin as a domestic program distributed from Uniek's warehouses in Waunakee, WI. The change to a direct import program will be determined by Uniek and Dollar General following setting all stores with the 2005 planogram.

The remainder of the letter sets out the terms of the new relationship. Plaintiff agreed to pay for additional fixtures that would be needed to display its frames "upon receiving complete exclusivity to the line planogram for 12 months based on service performance and product satisfaction." With respect to inventory, plaintiff was "to only carry 30 days of merchandise on hand to supply [defendant] at all times." If an item was discontinued, plaintiff and defendant would "work together to liquidate the merchandise on store leve[l] to avoid excess inventory."

After signing the letter of understanding, plaintiff and defendant began working together more closely. Plaintiff's employees began making frequent visits to defendant's headquarters and employees of both companies traveled together to Hong Kong to meet picture frame manufacturers. Plaintiff's sales to defendant in 2005 exceeded $12 million.

Plaintiff believed that its relationship with defendant in 2006 would be an extension of the 2005 relationship. On January 30, 2006, defendant's buyer emailed plaintiff, informing it that it had been "awarded" certain "items" for the "Home Decor 2006 Planogram Year." On February 1, defendant's buyer sent another email to plaintiff, "congratulat[ing]" it "on all the new business" and asking plaintiff to have items shipped to defendant by May 15 and to "have ready a 30 day supply on hand." Because many of the items were manufactured in China, plaintiff began immediately manufacturing, shipping and warehousing the items listed in the January 30 email. (Neither party proposes facts identifying those items.) In February 2006, representatives of defendant told plaintiff several times that defendant would sign a 2006 "letter of agreement" similar to the 2005 letter.

On March 13, 2006, defendant told plaintiff that it was "re-reviewing" the 2006 planogram. However, defendant did not tell plaintiff to stop producing, shipping or warehousing any items. Approximately three weeks later, defendant told plaintiff that it would be "revisiting suppliers to be used for the 2006 Planogram."

On April 18, defendant told plaintiff that in two weeks it would decide who would be its "core" picture frame supplier for 2006. On May 15, defendant told plaintiff that it had selected a new picture frame supplier.

## OPINION

At issue is the first provision in Wis. Stat. § 100.18. It consists of one sentence only, but its length would put even Dickens to shame. It reads:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1).

Although the wording is cumbersome, the gist of the provision is simple, at least for the purpose of this case: it prohibits the making of false or misleading representations to "the public" in the context of certain business transactions. The question presented by defendant's motion for summary judgment is whether defendant's 2006 statements on which plaintiff says it relied were made to "the public" within the meaning of Wis. Stat. § 100.18. (Defendant does not suggest that the economic loss doctrine would bar reliance on Wis. Stat. § 100.18, so I need not consider that

question. *Compare Kailin v. Armstrong,* 2002 WI App 70,¶ 42, 252 Wis.2d 676, 643 N.W.2d 132 (Ct.App.2002) (economic loss doctrine does not apply to claims brought under Wis. Stat. § 100.18) *with MBI Acquisition Partners, L.P. v. Chronicle Publishing Co.,* 301 F.Supp.2d 873, 886 (W.D.Wis.2002) (dismissing claims brought under Wis. Stat. § 100.18 as barred by economic loss doctrine).)

On its face, a statement made to "the public" suggests an attempt to communicate with a large audience rather than a private message directed at one party. *Webster's New World Dictionary* 1087 (3d College ed.1988) (defining "public" as "the people as a whole"). It is likely that this was the meaning the legislature intended to give the term when it passed the precursor to § 100.18 in 1925. At that time, the statute was limited to fraudulent *advertising* and could be enforced by the state only (presumably for the public good rather than for an individual's private interests). Wis. Stat. § 343.413 (1925). Thus, like the Federal Trade Commission Act of 1914, it appears that the Wisconsin law was enacted primarily to protect "the vast multitude" from buying products as the result of advertisements likely to mislead "the ignorant, the unthinking and the credulous" consumer. *Aronberg v. Federal Trade Commission,* 132 F.2d 165, 167 (7th Cir.1942).

In the following decades, many if not all of the other states adopted similar statutes patterned on a number of model laws such as the Unfair Trade Practices and Consumer Protection Law, the Uniform Deceptive Trade Practices Act and the Uniform Consumer Sales Practices Act. Like the Federal Trade Commission Act and the original version of the Wis. Stat. § 100. 18, these laws focused on stopping large scale *consumer* fraud and were usually enforceable by the state attorney general only, at least in the early years. Sheila B.

Scheuerman, *The Consumer Fraud Class Action,* 43 Harv. J. on Legis. 1, 14–20 (2006). Contract law was insufficient to protect consumers from fraud "because a business could make false claims about its product or advertise lower-than-actual prices without entering into a contract." Victor E. Schwartz and Cary Silverman, *Common Sense Construction of Consumer Protection Acts,* 54 U. Kan. L.Rev. 1, 7 (2005).

During this time period, Wisconsin's law was anything but static. Over the years, the statute has been amended numerous times to expand its protections. The current version of the statute is no longer limited to advertising or even to sales. It now extends to a false or misleading "representation of any kind" and to inducements to enter into "any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise securities, employment or service." And of course, as is demonstrated by this case, § 100.18 is not limited to enforcement by the state for the public good, but may be used as well by individuals seeking to protect their own interests. Wis. Stat. § 100. 18(11)(b)2.

■ Thus, it should come as no surprise that the Wisconsin courts have rejected a number of efforts to restrict the meaning of "the public" to what was intended originally. The first judicial construction of the term came in 1974, when the Wisconsin Supreme Court concluded that "use of the term 'the public' does not mean that the statements be made to a large audience. As has been noted, in some situations one person can constitute the public." *State v. Automatic Merchandisers of America, Inc.,* 64 Wis.2d 659, 664, 221 N.W.2d 683, 686 (1974). The court concluded that "the public" included persons who had purchased a vending machine after the defendant had made misrepresentations both

orally and in printed promotional materials. *Id.* In *Bonn v. Haubrich,* 123 Wis.2d 168, 173, 366 N.W.2d 503, 505 (Ct.App. 1985), the court rejected an argument that § 100.18(1) did not cover a transaction unless it involved advertising or printed materials. Finally, in *K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.,* 2006 WI App 148, ¶¶ 23–27, 295 Wis.2d 298, 720 N.W.2d 507 (2006), the court held that a plaintiff was not excluded from the protections of the statute simply because it had had some dealings with the defendant in the past. *Id.* at ¶ 27 (concluding that statute could apply to plaintiff that "received catalogs and brochures from [the defendant], previously made inquiries about products and prices, and purchased one product from [the defendant] four years earlier"). Along these same lines, I concluded in *Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F.Supp. 1227, 1236–37 (W.D.Wis.1997), that Wis. Stat. § 100.18(1) applied equally to individual consumers and commercial entities.

■ Given these decisions and all the changes in the law since Wis. Stat. § 100.18(1) was first passed, one could argue plausibly that it is anachronistic to interpret "the public" as having *any* limitation on the parties that can seek the law's protections. Potentially, any person or entity is a member of the public. Because the statute now covers so many situations that the legislature in 1925 did not anticipate, perhaps it is a mistake to continue viewing the term as reflecting the legislature's intent to limit the law's scope to a particular group of people.

Regardless of the merit of such an approach, it has not yet been embraced by the Wisconsin courts. Although they have stressed that "the public" has "a broad meaning" in the context of Wis. Stat. § 100.18(1), *e.g., K & S Tool & Die,* 2006 WI App 148, ¶ 20, 720 N.W.2d 507, they have declined to conclude that the term means everyone. Thus far, *Automatic Merchandisers* is the only case in which the Wisconsin Supreme Court has considered whether a particular party falls within the meaning of "the public" under the statute. Although the court did not set forth an explicit test for making that determination, in rejecting the argument that the plaintiff did not fall within the statute's purview, the court stated, "there is no peculiar relation between the defendants and the prospective purchasers which would distinguish the prospective purchasers from 'the public' which the legislature intended to protect." *Automatic Merchandisers,* 64 Wis.2d at 663, 221 N.W.2d at 686. In subsequent cases, the court of appeals has derived a test from this statement: whether the plaintiff had a "particular relationship" with the defendant of a type the legislature did not intend to protect. *Kailin,* 2002 WI App 70, ¶ 44, 252 Wis.2d 676, 643 N.W.2d 132; *K & S Tool & Die,* 2006 WI App 148, ¶¶ 20–23, 720 N.W.2d 507.

It is not immediately apparent how this test should be applied. As discussed above, discerning the legislature's intent for a statute that has been amended numerous times is less than straightforward. *Which* legislature's intent should control? It was the 1925 legislature that inserted the term into the statute, but the current version bears little resemblance to its original form. In *Automatic Merchandisers,* 64 Wis.2d at 662–63, 221 N.W.2d at 685, the court acknowledged that the meaning of the term had changed since the law's inception. *Id.* (rejecting attorney general's 1925 interpretation of the statute because of amendments made to statute). But there is little indication in the statute or the case law how the amending legislatures intended their changes to affect the meaning of "the public."

Some guidance is provided in *Kailin*, 2002 WI App 70, 252 Wis.2d 676, 643 N.W.2d 132, the only published case in which a Wisconsin court has concluded that a plaintiff did not qualify as a member of "the public." In that case, the court held that a misrepresentation was not made to "the public" within the meaning of Wis. Stat. § 100.18(1) if the statement was made to a party with whom the defendant had a contract. The court stated: "Once the contract was made, the Kailins were no longer 'the public' under the statute because they had a particular relationship with Armstrong—that of a contracting party to buy the real estate that is the subject of his post-contractual representation." *Id.* at ¶ 44.

Although plaintiff does not say so explicitly, it would limit *Kailin* to its facts. It suggests that any relationship short of a contract is not a "particular relationship" depriving a party of the protections of Wis. Stat. § 100.18(1). Of course, the precise nature of plaintiff's relationship with defendant at the beginning of 2006 is the central dispute in this case. However, I need not determine for the purpose of defendant's motion for summary judgment whether this relationship constituted a contract.

If the Wisconsin courts had intended to exclude from the law only contracting parties, it could have stated the rule as whether the parties had a "contracting relationship," but they have employed the more general language, "particular relationship." The standard suggested in *Automatic Merchandisers*, 64 Wis.2d at 664, 221 N.W.2d at 686, is whether the plaintiff had a relationship that would somehow "distinguish" it from any other party. By adopting this standard, it appears that the Wisconsin courts have attempted to preserve some aspect of the statute's original purpose in protecting the "vast multitude," who cannot be expected to be educated enough about the other party to protect their own interests. Although the courts have never clearly articulated the rationale for the "particular relationship" standard, presumably it is that those who have long-term, established relationships are in a better position than most to protect themselves in the context of that relationship. Given the statute's current application to the sophisticated business entity as well as the ignorant consumer and to statements that never reach the "vast multitude," one could question whether this attempt to meld the old with the new leads to the most logical distinctions between those plaintiffs that fall within the statute and those that are excluded.

However, to the extent the "particular relationship" test should be reexamined, that is a task for the Wisconsin Supreme Court; the duty of this court is to apply the standard provided by the state courts. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir.2002). In doing so, it is not difficult to conclude that plaintiff cannot maintain its claim under Wis. Stat. § 100.18(1). Plaintiff attempts to compare its relationship to defendant with the one at issue in *K & S Tool & Die*, but this comparison borders on the ridiculous. In *K & S Tool & Die*, 2006 WI App 148, ¶ 27, 720 N.W.2d 507, the plaintiff had made one purchase from the defendant, four years earlier. In contrast, before this dispute arose, plaintiff had had an ongoing relationship with defendant for thirteen years, selling as much as $12 million of merchandise in a single year. If there were any doubt whether plaintiff had a "particular relationship" with defendant from 1993 though 2004, this doubt is dissipated with respect to the relationship established in 2005. It was then that the parties signed the "letter of understanding," under which plaintiff became defendant's core picture frame supplier. The dispute in 2006 that led to this lawsuit involves the same rela-

tionship that was covered by the 2005 letter.

If this relationship does not "distinguish" plaintiff from "the public," then virtually nothing would. In other words, if "the public" has any limiting scope on Wis. Stat. § 100.18(1), plaintiff's claim is one that must be excluded. Because current Wisconsin case law adheres to the view that "the public" does restrict the beneficiaries of Wis. Stat. § 100.18(1), I must grant defendant's motion for summary judgment. This conclusion makes it unnecessary to consider defendant's alternative arguments that Wis. Stat. § 100.18(1) does not protect sellers and that plaintiff has failed to adduce sufficient evidence that defendant made any representations that were false when made.

## ORDER

IT IS ORDERED that defendant Dollar General Corporation's motion for summary judgment on Count II of plaintiff' Uniek, Inc.'s complaint is GRANTED. Plaintiff's claim under Wis. Stat. § 100.18 is DISMISSED.