Randy W. BONN, Plaintiff-Appellant,

v.

Michael HAUBRICH, Defendant-Respondent.†

Court of Appeals

*No. 84–1073. Submitted on briefs January 8, 1985.—*
*Decided February 6, 1985.*
(Also reported in 366 N.W.2d 503.)

† Petition to review denied.

For the plaintiff-appellant, the cause was submitted on the briefs of *W.O. Kupfer,* of *Kupfer & Kupfer,* of Kenosha.

For the defendant-respondent, the cause was submitted on the brief of *Alfred F. Decker,* of Kenosha.

On behalf of the Wisconsin Department of Justice, an amicus curiae brief was submitted by *Bronson C. La Follette,* attorney general, and *Richard A. Victor,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Randy W. Bonn appeals from a judgment of the circuit court granting a motion to dismiss on the grounds that the evidence was insufficient to sustain a cause of action under sec. 100.18, Stats.

In this case, the parties argue whether sec. 100.18(1), Stats., applies to alleged misrepresentations made during the sale of jewelry from Haubrich to Bonn.[1]   The

---

[1] Section 100.18(1), Stats., provides:

**Fraudulent advertising.**   (1) No person, firm, corporation or association, or agent or employe thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employe thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service,

broader issue is whether sec. 100.18(1) applies in a case where there is no media advertising.[2] We conclude that sec. 100.18(1) is applicable in this case. Accordingly, we reverse.

In February 1981, Randy Bonn attempted to liquidate a ruby that he had purchased as an investment from Michael Haubrich, a sales representative of Diamond Source Limited. In July 1980, Haubrich had contacted Bonn by telephone and inquired as to whether Bonn might be interested in investing in gem stones. Haubrich then met with Bonn at Bonn's house where they discussed investment in the gem stone market. Bonn testified that Haubrich presented literature on rubies, claimed that rubies were a "hot selling thing on the market" and stated that the value of rubies would appreciate between twenty and thirty percent in the first year. Haubrich told that he could liquidate the ruby with him or any other gem company in the United States without a problem.

Bonn purchased a ruby from Haubrich for $5,049.20. In September 1980, Bonn received the stone and approximately one week later, he gave it to Haubrich to have it

shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

[2] We certified this issue to the Wisconsin Supreme Court for determination. The certification was denied on January 8, 1985.

authenticated. That ruby was never returned to Bonn. Haubrich told him it had been lost in transit.

In November 1980, Haubrich supplied Bonn with another ruby. He also provided a written appraisal valuing the stone at $13,130. Bonn testified that Haubrich stated the ruby had a liquidation value between $8,000 and $9,000 and that this stone was better than the first stone.

In February 1981, Bonn attempted to liquidate the ruby through Haubrich and through Diamond Source Limited but was unable to do so. Bonn then commenced this action against Haubrich for fraud and misrepresentation.

At trial, Bonn's expert jeweler testified that the ruby had a wholesale value of $700 and a liquidation value of ten to twenty percent less than $700. He also testified that there was very little, if any, appreciation in the value of rubies between July 1980 and December 1981.

At the close of Bonn's case, the trial court granted Haubrich's motion to dismiss. The trial court held that sec. 100.18(1), Stats., is intended to protect the public from fraudulent advertising. Because Haubrich did not advertise to obtain his contact with Bonn, the trial court concluded that the evidence presented by Bonn was insufficient to sustain a cause of action under sec. 100.18 (1).

Bonn contends that the trial court erred in interpreting sec. 100.18(1), Stats., to mean that a violation can only occur if the chain of events is commenced by some form of advertisement. He claims that the trial court's interpretation of sec. 100.18(1) is too narrow and defeats the intended purpose of the statute. We agree.

Statutory construction involves a question of law. *Behnke v. Behnke,* 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981). Appellate courts owe no deference

to the trial court's resolution of issues of law. *Id.* Where two interpretations of a statute are possible, we must ascertain the intent of the legislature as disclosed by the language of the statute in relation to its scope, history, context, subject matter and the object intended to be remedied or accomplished. *State v. Automatic Merchandisers of America, Inc.,* 64 Wis. 2d 659, 663, 221 N.W.2d 683, 686 (1974).

Section 100.18(1), Stats., was enacted in 1925. Before the *Automatic Merchandisers* case, rendered in 1974, the only interpretation given to the statute was in a 1925 opinion of the attorney general. "The position was then taken that the statute applied only to printed representations and not oral ones. 14 Op. Atty. Gen. (1925), 367." *Id.* at 662, 221 N.W.2d at 685. In 1945, the statute was amended, bringing "some, if not all, oral representations within the scope of the statute. Ch. 399, Laws of Wisconsin, 1945." *Id.* at 663, 221 N.W.2d at 685.

In *Automatic Merchandisers,* the defendants were engaged in the sale of mechanical vending machines and distributorship programs to Wisconsin consumers at prices substantially in excess of the actual value. The defendants advertised in the classified section of newspapers, and persons responding to those advertisements were contacted at their homes by the defendants. The defendants then presented various promotional materials and made oral representations. Some of these promotional materials and oral representations were alleged to be untrue, deceptive or misleading.

The court held that the defendants' activity came within the purview of sec. 100.18(1), Stats., *i.e.,* sec. 100.18 (1) applied to oral representations made in private conversations to prospective purchasers of the defendants' products. The court stated, "the statute applies not only to advertisements, but also to announcements, statements, or representations of any kind made to the public. . . .

It is not limited to media advertising." *Automatic Merchandisers* at 663, 221 N.W.2d at 686. "Sec. 100.18(1), Stats., is aimed at protecting the public from untrue, deceptive or misleading representations made in sales promotions. Therefore, the fact that the allegedly untrue, deceptive or misleading statements in this case were made to those responding to the defendants' advertisements rather than in the advertisements themselves should not be important." *Id.* at 665, 221 N.W.2d at 686–87.

In this case, Haubrich initially contacted Bonn by telephone. We reject Haubrich's contention that because Bonn had not initially responded to an advertisement, Bonn is not protected under sec. 100.18(1), Stats.[3] We conclude that coverage under sec. 100.18(1) is not limited to transactions involving media advertising in the first instance. The fact that the alleged untrue, deceptive or misleading representations were made to Bonn as part of a sales promotion is sufficient to afford him protection under sec. 100.18(1).[4]

The intended purpose of sec. 100.18(1), Stats., is to protect consumers from untrue, deceptive or misleading representations made to promote the sale of a product. *Automatic Merchandisers* at 665, 221 N.W.2d at 686–87.

---

[3] We cannot be misled because sec. 100.18, Stats., is captioned "Fraudulent advertising." *See State v. Genova,* 77 Wis. 2d 141, 145, 252 N.W.2d 380, 383 (1977). Section 990.001(6), Stats., provides that: "The titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes."

[4] We note that the use of the term "the public" in sec. 100.18 (1), Stats., does not mean that the statements must be made to a large audience. *State v. Automatic Merchandisers,* 64 Wis. 2d 659, 664, 221 N.W.2d 683, 686 (1974). Bonn alone constitutes "the public" under this section. *See id.*

Untruths, deceptions or misleading representations are no less harmful when they follow an initial telephone contact than a media advertisement. Therefore, we conclude that the fact than Bonn was initially contacted by telephone rather than by media advertisement is not controlling.

*By the Court.*—Judgment reversed.