K&S Tool & Die Corporation,
Plaintiff-Respondent,

v.

Perfection Machinery Sales, Inc.,
Defendant-Appellant-Petitioner,

Industrial Rebuilding & Machining, Inc.,
Defendant,

United National Insurance Company, Intervenor.

Supreme Court

*No. 2005AP2148. Oral argument December 14, 2006.
—Decided June 12, 2007.*

2007 WI 70

(Also reported in 732 N.W.2d 792.)

112

For the defendant-appellant-petitioner there were briefs by *Gregory P. Seibold* and *Murphy Desmond S.C.*, Madison; *Paul T. Fox* and *Greenberg Traurig, LLP*, Chicago, IL, and oral argument by *Gregory P. Seibold*.

For the plaintiff-respondent there was a brief by *Michael J. Hanrahan* and *Fox, O'Neill & Shannon, S.C.*, Milwaukee, and oral argument by *Michael J. Hanrahan*.

¶ 1. JON P. WILCOX, J. This is a review of a published court of appeals decision, *K&S Tool & Die Corporation v. Perfection Machinery Sales, Inc.*, 2006 WI App 148, 295 Wis. 2d 298, 720 N.W.2d 507. The court of appeals affirmed a judgment of the Jefferson County Circuit Court, Jacqueline R. Erwin, Judge, in favor of K&S Tool & Die Corporation (K&S). K&S claimed that Perfection Machinery Sales, Inc. (Perfection) violated

Wis. Stat. § 100.18 (2005–06),[1] Wisconsin's Deceptive Trade Practices Act (DTPA), by making a misrepresentation about the pressing force of a press K&S purchased from Perfection. After a trial, the jury found in favor of K&S.

¶ 2. Perfection petitioned this court for review of two issues. First, whether the circuit court erred in ruling that Perfection was not entitled to a ruling as a matter of law pertaining to K&S's status as a member of "the public" for the purpose of Wis. Stat. § 100.18(1).[2] We hold that the circuit court did not err because whether K&S was a member of "the public" under § 100.18(1) presented a question of fact that the court properly submitted to the jury. Second, whether the jury erred in finding that the misrepresentation in Perfection's quotation for the two 1000–ton presses

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise stated.

[2] Wisconsin Stat. § 100.18(1) provides, in pertinent part, the following:

No person, firm, corporation or association, or agent or employee thereof, with intent to sell ... merchandise ... offered ... directly or indirectly, to the public for sale ... or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase ... of any ... merchandise ... shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase ... of such ... merchandise ... or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

115

caused K&S pecuniary loss pursuant to Wis. Stat. § 100.18(11)(b)2.[3] We hold that the jury did not err because sufficient evidence supports its finding. Accordingly, we affirm the court of appeals.

## I

¶ 3. K&S creates metal parts and dies in Ixonia, Wisconsin. One service offered by K&S is production stamping, which entails using a press and a die to stamp steel into parts.

¶ 4. Late in 1999, or early in 2000, John Deere approached K&S about creating platforms for some of its riding lawnmowers. As an initial step, K&S began building a die. It performed die tryouts with a press that had a 450–ton pressing force.[4]

¶ 5. After completing the die, K&S began producing the platforms with their 450–ton press. It soon discovered that it needed a press with at least a 1000–ton pressing force. A 1000–ton press would allow K&S to create the platforms with one hit, rather than needing multiple hits from its 450–ton press. Needing fewer hits would allow K&S to create the platforms more profitably. Upon its discovery, K&S began shopping for a 1000–ton press.

¶ 6. Perfection, an Illinois corporation, sells used industrial machinery to commercial clients nationwide. When K&S began looking for a 1000–ton press, it was

[3] Wisconsin Stat. § 100.18(11)(b)2. provides, in pertinent part, the following: "Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees . . . ."

[4] A "die tryout" is a process used to refine the design of a die.

116

familiar with Perfection because Perfection had periodically sent K&S catalogs highlighting its inventory. K&S had also purchased a machine known as a roll former from Perfection in 1996.

¶ 7. Thomas Klusken (Klusken), an owner of K&S, contacted Jason Broderick (Broderick), a Perfection sales representative, to inquire about the 1000–ton press K&S sought. Perfection had a 1000–ton Danly press in its inventory, but it did not have the cushions that K&S required. With the 1000–ton Danly press not being suitable, Perfection did not have a press meeting K&S's specifications in its inventory. However, the conversation between Klusken and Broderick ended with Broderick agreeing to keep an eye out for a 1000–ton press that fit K&S specifications.

¶ 8. Broderick subsequently contacted Klusken to inform him that he had found two 1000–ton presses in Michigan. Shortly thereafter, Perfection faxed a quotation to K&S on Perfection letterhead that began with form language stating "GENTLEMEN: We are pleased to offer for your consideration . . ." followed by

**TWO (2) 1000 TON CLEARING STRAIGHT SIDE PRESSES Model #: SE4 - 1000–108–60 Serial No.: 10–1646 and 10–4163**

| | |
|---|---|
| Bed Area: | 108" x 60" |
| Ram Area: | 108" x 60" |
| Stroke: | 20" |
| Adjustment: | 15" |
| Shut Height: | 50" |
| SPM: | 25 |
| Bolster: | 8" "T" Slotted |
| Cushions | |
| Gibbings: | 8 point |

T-Slotted Ram
Controls
Recirculating Lube System
Pit
Hydraulic Overloads
Hydraulic Tie-Rod Nuts

**PRICE:............$225,000.00 Each As Is Loaded**

### SPECIFICATIONS ARE APPROXIMATE ONLY, INTENDED SOLELY AS A GUIDE AND ARE NOT BINDING

The letterhead also stated the following at the bottom: "THE COUNTRY'S LARGEST INVENTORY OF USED LATE MODEL PRESSES, FABRICATING & METAL-WORKING EQUIPMENT."

¶ 9. K&S hired Industrial Rebuilding & Machining, Inc. (Industrial Rebuilding) to inspect the condition of the two presses, both of which were dismantled. The inspection did not include assessing the pressing force. After the inspection, Industrial Rebuilding recommended one of the presses over the other. K&S contacted Perfection to let it know that it was interested in purchasing the press that Industrial Rebuilding recommended. Perfection then purchased the press and sold it to K&S. After K&S had purchased the press, it hired Industrial Rebuilding to rebuild and install the press in K&S's plant.

¶ 10. When K&S began using the press, it discovered that the press failed to function as expected. Rather than creating the John Deere platforms with one hit, it took three hits. After K&S unsuccessfully attempted to adjust the press to remedy the problem, it contacted the manufacturer of the press. The manufacturer informed K&S that it had bought an 800–ton press, which had been converted from a 1000–ton press.

118

¶ 11. K&S filed suit against Perfection and Industrial Rebuilding asserting a number of claims. Although K&S settled its claims against Industrial Rebuilding, it proceeded to trial against Perfection claiming that Perfection had violated the DTPA.

¶ 12. After the close of K&S's evidence, Perfection moved to dismiss on two grounds. First, Perfection argued that K&S had provided no evidence that it had relied on Perfection's quotation when it purchased the 800–ton press. Second, Perfection argued that K&S was not a member of "the public" for the purpose of § 100.18(1). The circuit court denied the motion to dismiss as it pertained to reliance, but took the motion under advisement as it related to whether K&S was a member of "the public."

¶ 13. After the close of all of the evidence, Perfection renewed its motion to dismiss on the same grounds. The circuit court made the same ruling, denying it related to reliance and taking the member of "the public" issue under advisement.

¶ 14. The circuit court submitted the following special verdict questions to the jury:

1. Was K&S Tool & Die Corporation a member of the "public" under § 100.18 of the Wisconsin Statutes?

 ――――― ―――――
 Yes No

2. Regardless of whether or not K&S was a member of the public,

 Did Perfection Machinery Sales, Inc. violate § 100.18 of the Wisconsin Statutes?

 ――――― ―――――
 Yes No

119

Only if you answered Question #2 "Yes", answer Question #3.

3. Did the untrue representation cause K&S Tool & Die Corporation to enter a transaction with Perfection Machinery Sales, Inc.?

 _____ _____
 Yes No

Regardless of how you answered Questions 1–3, answer Question #4.

4. What monetary loss, if any, did [K&S] sustain as a result of a § 100.18 violation?

 $_____

The jury marked "Yes" for the first three questions and filled in $306,000 for the fourth.

¶ 15. Perfection made five motions after verdict: (1) to dismiss, (2) to change answers, (3) for judgment notwithstanding verdict, (4) for remittitur, and (5) for a new trial. Perfection presented multiple grounds for the various motions. Like with its previous motions to dismiss, it argued that K&S failed to establish that it was a member of "the public" or prove that it relied on Perfection's quotation. Perfection also argued that the jury answer related to damages was excessive and not supported by the evidence. Finally, Perfection moved the court based on what it characterized as inflammatory and prejudicial comments made during K&S's closing argument. The circuit court denied all of the motions after verdict.

¶ 16. Perfection appealed to the court of appeals. It sought review of three issues. First, whether K&S was a member of "the public" as a matter of law. Second, whether the circuit court erroneously instructed the jury related to the meaning of "the public." Finally,

120

whether sufficient evidence supported the jury's finding that Perfection's untrue representation caused K&S pecuniary loss.

¶ 17. The court of appeals affirmed the judgment of the circuit court. It concluded that Perfection was not entitled to a ruling as a matter of law as to K&S being a member of "the public," the circuit court did not erroneously instruct the jury on the meaning of "the public," and the jury did not err in its finding related to K&S's pecuniary loss.

¶ 18. Perfection petitioned this court for review of two issues. First, whether the circuit court erred in ruling that Perfection was not entitled to a ruling as a matter of law pertaining to K&S's status as a member of "the public" for the purpose of Wis. Stat. § 100.18(1). Second, whether the jury erred in finding that Perfection's quotation for the two 1000– ton presses caused K&S pecuniary loss.[5]

## II

¶ 19. K&S claims Perfection violated § 100.18(1). To prevail on such a claim, the plaintiff must prove three elements. *Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233; Wis JI-Civil 2418.[6] First, that with the intent to induce an

---

[5] Unlike in the court of appeals, Perfection did not petition for review of whether the circuit court erroneously exercised its discretion in instructing the jury about the meaning of "the public." Accordingly, we do not address that issue. *See Taylor v. Greatway Ins. Co.,* 2001 WI 93, ¶ 1 n.2, 245 Wis. 2d 134, 628 N.W.2d 916.

[6] In *MADCAP I, LLC v. McNamee,* 2005 WI App 173, ¶ 22, 284 Wis. 2d 774, 702 N.W.2d 16, the court of appeals suggested

obligation, the defendant made a representation to "the public." Wis. Stat. § 100.18(1). Second, that the representation was untrue, deceptive or misleading. *Id.* Third, that the representation caused the plaintiff a pecuniary loss. Wis. Stat. § 100.18(11)(b)2. The issues presented in this case relate to the first and last elements, which we address in that order.

A. Representation to "the Public"

¶ 20. Perfection argues that the circuit court erred in its decision that Perfection was not entitled to a ruling as a matter of law pertaining to K&S's status as a member of "the public." The DTPA does not define the phrase "the public." However, courts have interpreted the phrase. *State v. Automatic Merchs. of Am., Inc.,* 64 Wis. 2d 659, 663, 221 N.W.2d 683 (1974); *Kailin v. Armstrong,* 2002 WI App 70, ¶ 44, 252 Wis. 2d 676, 643 N.W.2d 132; *Bonn v. Haubrich,* 123 Wis. 2d 168, 174, 366 N.W.2d 503 (Ct. App. 1985).

¶ 21. In *Automatic Merchandisers,* the court considered whether § 100.18(1) applied to "oral representations made in private conversations to prospective purchasers." *Automatic Merchs.,* 64 Wis. 2d at 662. To address the issue, the court interpreted § 100.18(1) "in relation to its scope, history, context, subject matter and the object intended to be remedied or accomplished." *Id.* at 663. Based on an amendment by the legislature to expand the types of marketing methods covered, the

_____

that a § 100.18(1) claim had four elements. Unlike this court in *Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233, it listed as a distinct element the defendant's intent to induce an obligation. *MADCAP I,* 284 Wis. 2d 774, ¶ 22. Although the suggestion did not affect the outcome of that case, we note for consistency that a § 100.18(1) claim has three elements, not four.

court concluded that "the legislature intended to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product." *Id.*

¶ 22. The *Automatic Merchandisers* defendants argued that their conduct fell outside of the scope of § 100.18(1) because allegations in the complaint related to private statements made to prospective purchasers that had responded to notices in the classified sections. Statements made in private, the argument went, were not made to "the public."

¶ 23. The *Automatic Merchandisers* court rejected the proposition that statements made in private were not made to "the public." The court concluded that a statement made to an individual could be a statement made to "the public." *Id.* at 664. The court also noted that when it comes to determining if a plaintiff is a member of "the public," "[t]he important factor is whether there is some particular relationship between the parties." *Id.* Applying its interpretation of "the public," the court stated that "[h]ere there is no peculiar relation between the defendants and the prospective purchasers which would distinguish the prospective purchasers from 'the public' which the legislature intended to protect." *Id.*

¶ 24. The *Automatic Merchandisers* court did not specify when a relationship was particular enough to exclude a plaintiff from "the public." In this regard, it followed the lead of the court when it interpreted the phrase "public utility" in *Cawker v. Meyer,* 147 Wis. 320, 326, 133 N.W. 157 (1911). The *Cawker* court stated the following:

> While we find it quite easy to ascertain the true spirit and intent of the law, yet we deem it inexpedient and

123

unsafe to attempt to define in more specific terms than the statute what does and what does not constitute a public utility. Each case will depend upon its own peculiar facts and circumstances and must be tested by the statute in light of such facts and circumstances.

*Id.* The use of "the public," in the context of § 100.18(1) and utility law, did not lend itself to the formulation of a bright-line test.

■

¶ 25. Subsequent to this court establishing the presence of a particular relationship as an important factor, the court of appeals has provided some further guidance on who and when a plaintiff is a member of "the public." First, the substance of a representation made to induce an obligation, rather than the form of the initial contact, has more significance in determining whether a plaintiff is a member of "the public" for the purpose of § 100.18(1). *Bonn,* 123 Wis. 2d at 174. In *Bonn,* the plaintiff alleged that the defendant violated § 100.18(1) when he made misrepresentations about the apprecia-tion value of rubies and the liquidation value of a ruby the plaintiff purchased from him. The relationship be-tween the plaintiff and defendant commenced when the defendant telephoned the plaintiff to inquire about his interest in investing in gem stones. The defendant ar-gued that he did not violate § 100.18(1) because the relationship commenced with a phone call, not an adver-tisement. The court rejected the argument, stating that "[t]he fact that the alleged untrue, deceptive or mislead-ing representations were made to [the plaintiff] as part of a sales promotion is sufficient to afford him protection under sec. 100.18(1)." *Id.* at 173. The court "conclude[d] that the fact that [the plaintiff] was initially contacted by telephone rather than by media advertisement [was] not controlling." *Id.* at 174.

¶ 26. Additionally, a plaintiff is no longer a member of "the public" for the purpose of Wis. Stat. § 100.18(1) once he or she has entered into a contract to purchase the offered item. *Kailin,* 252 Wis. 2d 676, ¶ 44. In *Kailin,* the plaintiffs alleged that the defendants violated § 100.18(1) when they failed to disclose a tenant's history of delinquency in rent payments. The tenant was in default both at the time the defendant accepted the offer to purchase and at the time of closing. The court concluded that "[o]nce the contract was made, the Kailins were no longer 'the public' under [§ 100.18(1)] because they had a particular relationship with Armstrong—that of a contracting party to buy the real estate that is the subject of his post-contractual representation." *Id.,* ¶ 44. Accordingly, the Kailins' § 100.18(1) claim was limited to alleged misrepresentations made before they entered into the contract to purchase.

¶ 27. Based on the existing interpretations of "the public," a plaintiff remains a member of "the public" unless a particular relationship exists between him or her and the defendant. The existence of a particular relationship "will depend upon its own peculiar facts and circumstances and must be tested by the statute in the light of such facts and circumstances." *Cawker,* 147 Wis. at 326.

¶ 28. Perfection has argued that a particular relationship existed between it and K&S, meaning K&S fell outside the scope of "the public" for the purpose of § 100.18(1). Before the circuit court, Perfection challenged the sufficiency of the evidence. Assessing the evidence as overwhelmingly in favor of there being a particular relationship, it moved the circuit court to

125

address K&S's status as a member of "the public" as a matter of law. However, the circuit court denied each of Perfection's challenges of the sufficiency of the evidence.

¶ 29. When circuit courts consider challenges of the sufficiency of the evidence, Wis. Stat. § 805.14(1) provides the following test:

> No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

Appellate courts overturn only a clearly erroneous denial of a motion challenging the sufficiency of the evidence. *Hasse v. Badger Mining Corp.*, 2004 WI 97, ¶ 17, 274 Wis. 2d 143, 682 N.W.2d 389; *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 273, 580 N.W.2d 233 (1998). In assessing the sufficiency of the evidence, circuit courts are accorded substantial deference because they are in a better position to decide the weight and relevancy of the evidence presented. *Id.*

¶ 30. A circuit court's decision to submit a question to the jury is clearly erroneous if it is a question of law. *See, e.g., Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 438, 265 N.W.2d 513 (1978). However, in this case, whether K&S was a member of "the public" presented a question of fact. Based on the evidence, a reasonable jury could have made conflicting inferences or found in either party's favor. The circuit court did not err in denying Perfection's motions pertaining to K&S's status as a member of "the public."

¶ 31. On one hand, the jury could have reasonably found that a particular relationship existed between Perfection and K&S. The jury heard evidence that K&S had purchased a roll former from Perfection in the past. It heard that Klusken, an owner of K&S, and Broderick, a Perfection sales representative, entered into an agreement for Perfection to find K&S a suitable press, after the parties agreed that a suitable press was not in Perfection's inventory. If a jury inferred from these facts that a particular relationship existed between Perfection and K&S, it could have reasonably concluded that K&S was not a member of "the public" when it received the quotation that contained the misrepresentation.

¶ 32. On the other hand, a jury could reasonably find that K&S was a member of "the public" when Perfection faxed the quotation, as the jury did in this case. Evidence supporting this finding includes that Perfection held itself out as having "the country's largest inventory of used late model presses, fabricating & metalworking equipment," according to its quotation. Given the nature of Perfection's business as an industry leader, the jury could reasonably infer that K&S contacting Perfection for a used press would not be a sufficient fact to create a particular relationship. Additionally, K&S bought the roll former from Perfection back in 1996, but had purchased nothing else either before or after that purchase. The purchase could be construed as too isolated to establish a particular relationship. The jury also heard the following testimony from Broderick, the Perfection sales representative:

> I always try to help customers. I always try to help them out; try to sell a machine. If I could earn their business, help them out, do them a favor, the hope is that they will want to come back and buy other equipment from us and you can get repeat sales. So, yes, it is

standard procedure that I would, I would offer: "Hey, what are you looking for? If I can find that, I'll let you know." As far as suiting their needs, it's more of "I'm looking for this machine XYZ; let me know if you find one" – then I can do that. But I'm not an engineer or manufactor.

From this testimony, the jury could reasonably infer that the agreement that Broderick made with Klusken to make K&S aware of any suitable presses he found did not rise to the level of Perfection and K&S having a particular relationship if Broderick "always" tried to help customers in the same way he offered to help K&S. If a jury inferred from these facts that a particular relationship did not exist between Perfection and K&S, it could reasonably conclude that K&S was a member of "the public" when it received Perfection's quotation.

¶ 33. Based on the evidence, a question of fact existed over whether K&S was a member of "the public" when the circuit court took Perfection's motions to dismiss under advisement at the close of K&S's evidence and at the close of all evidence. The question also existed when the circuit court submitted the question to the jury. After the jury answered the question of fact in favor of K&S, sufficient evidence was in the record to sustain the jury verdict and deny Perfection's motion for directed verdict. Accordingly, we hold that the circuit court did not err because whether K&S was a member of "the public" under § 100.18(1) presented a question of fact that the court properly submitted to the jury.

B. Representation Caused Pecuniary Loss

¶ 34. As mentioned above, one of the other elements K&S needed to prove was that Perfection's misrepresentation in its quotation for the two 1000–ton presses caused it to sustain a pecuniary loss. Perfection

argues that the jury erred in finding that its quotation caused K&S pecuniary loss because there was a lack of sufficient evidence to support such a verdict.

¶ 35. Wisconsin Stat. § 100.18(11)(b)2. provides that "[a]ny person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss." This section requires a causal connection between the untrue, deceptive, or misleading representation and the pecuniary loss. *Tim Torres Enters., Inc. v. Linscott,* 142 Wis. 2d 56, 70, 416 N.W.2d 670 (Ct. App. 1987). Because the purpose of the DTPA includes protecting Wisconsin residents from untrue, deceptive, or misleading representation made to induce action, *see* § 100.18(1); *Kailin,* 252 Wis. 2d 676, ¶ 44 (citing *Bonn,* 123 Wis. 2d at 173 n.4), proving causation in the context of § 100.18(1) requires a showing of material inducement. *See* Wis JI-Civil 2418.

¶ 36. A plaintiff does not have the burden of proving reasonable reliance. Unlike common law causes of action for misrepresentations, reasonable reliance is not the standard for a DTPA claim because the legislature created a distinct cause of action. *Kailin,* 252 Wis. 2d at 708. "There is no indication in [§§ 100.18(1), 100.18(11)(b)2., and 100.18(11)(b)3.], or any of the other many and detailed subsections that make up § 100.18, that the legislature intended to add a remedy for common law misrepresentation claims rather than to create a distinct statutory cause of action." *Id.* Although the reasonableness of a plaintiff's reliance may be relevant in considering whether the representation materially induced the plaintiff's pecuniary loss, the plaintiff does not have the burden of proving

129

reasonable reliance. *See Malzewski v. Rapkin,* 2006 WI App 183, ¶ 24, 296 Wis. 2d 98, 723 N.W.2d 156 (citing *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.,* 2006 WI App 148, ¶¶ 39–45, 295 Wis. 2d 298, 720 N.W.2d 507).

¶ 37. In this case the jury heard the following instruction related to what K&S needed to prove pertaining to the causation element:

> To constitute an untrue, deceptive, or misleading representation in this case, there are three elements which must be proved by K&S Tool & Die Corporation.
>
> . . . .
>
> Third, K&S Tool & Die Corporation sustained a monetary loss as a result of the representation. In determining whether K&S Tool & Die Corporation's loss was caused by the representation, the test is whether K&S Tool & Die Corporation would have acted in its absence. Although the representation need not be the sole or only motivation for K&S Tool & Die Corporation's decision to buy the press, it must have been a material inducement. That is, the representation must have been a significant factor contributing to K&S Tool & Die Corporation's decision.

This jury instruction tracks the language provided in Wis JI—Civil 2418.[7]

---

[7] Wisconsin JI—Civil 2418 provides the following, in pertinent part:

> To constitute an untrue, deceptive, or misleading representation in this case, there are three elements which must be proved by *(plaintiff)*.
>
> . . . .

130

¶ 38. Appellate courts do not upset a jury verdict if there is any credible evidence to support it. *Meurer v. ITT Gen. Controls,* 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979); *Tim Torres Enters.,* 142 Wis. 2d at 67. "Weighing testimony and evaluating credibility of witnesses are matters for the jury." *Id.* In reviewing a jury verdict, "evidence will be viewed in the light most favorable to the verdict" and courts "search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach." *Meurer,* 90 Wis. 2d at 450–51.

¶ 39. Based on our review of the record, credible evidence supports the jury's finding that Perfection's misrepresentation in the quotation caused K&S pecuniary loss. For instance, during the direct examination of Klusken, done by counsel for K&S, the following exchange took place:

Q: Mr. Klusken, now turning to [the quotation], if you had received a promotional quotation from Perfection Machinery that said they were offering two 800–ton Clearing straight-sided presses, would you have made further inquiry about those presses?

A: No. I wouldn't have. I would have wanted to—I

---

Third, (*plaintiff*) sustained a monetary loss as a result of the (assertion) (representation) (statement). In determining whether (*plaintiff*)'s loss was caused by the (assertion) (representation) (statement), the test is whether (*plaintiff*) would have acted in its absence. Although the (assertion) (representation) (statement) need not be the sole or only motivation for (*plaintiff*)'s decision to (buy) (rent) (use) the _____ [product or item], it must have been a material inducement. That is, the (assertion) (representation) (statement) must have been a significant factor contributing to (*plaintiff*)'s decision.

would have just said we don't want to inquire on an 800–ton; we want a thousand ton.

Viewing this testimony in a light most favorable to sustaining the jury verdict, we conclude that Klusken's testimony indicated the quotation was a material inducement: in its absence, K&S would not have purchased the 800–ton press. Accordingly, the jury did not err in finding that Perfection's quotation caused K&S pecuniary loss.

¶ 40. Perfection argues that Klusken's testimony was merely self-serving. It also directs this court to evidence that supports findings other than the jury's. The findings include the following: K&S really relied on the expert advice of Industrial Rebuilding, rather than Perfection's quotation; K&S knew that Perfection had not inspected the press, making its reliance unreasonable; and Perfection's quotation's "as is" clause, and statement about specifications being approximate, prevented K&S from reasonably relying on the quotation. However, we "search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach." *Meurer,* 90 Wis. 2d at 451.

¶ 41. We hold that the jury did not err in finding that Perfection's quotation caused K&S pecuniary loss because sufficient evidence supports its finding.

### III

¶ 42. Because K&S's status as a member of "the public" presented a question of fact, the circuit court did not err in denying Perfection's motions challenging the sufficiency of the evidence related K&S's status as a member of "the public." Because credible evidence existed to support the jury's findings related to the cause

132

of K&S's pecuniary loss, the jury did not err either. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.