COURT OF APPEALS
DECISION
DATED AND FILED

October 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP72**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV3266

IN COURT OF APPEALS
DISTRICT IV

JULIE KLINGER AND JAMES KLINGER,

  PLAINTIFFS-APPELLANTS,

DEPARTMENT OF HEALTH AND HUMAN SERVICES, MEDICARE PARTS A&B,
THE MEDICAL ASSOCIATES CLINIC HEALTH PLAN OF WISCONSIN AND
AUTO-OWNERS INSURANCE COMPANY,

  INVOLUNTARY-PLAINTIFFS,

  V.

WISCONSIN MUTUAL INSURANCE COMPANY AND JOHN MASBRUCH,

  DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Julie Klinger and James Klinger appeal a circuit court order entered in favor of John Masbruch and his insurer, Wisconsin Mutual Insurance Company, based on a jury verdict in favor of Masbruch and the court's denial of postverdict motions filed by the Klingers.[1]   A jury heard evidence regarding a collision at an intersection controlled by a traffic light between a pickup driven by Masbruch and a sedan driven by Julie, which resulted in injuries to Julie.   Julie filed this negligence action against Masbruch.   At trial, the jury made the following pertinent findings:   Masbruch was negligent, but his negligence was not "a cause of Julie Klinger's injuries"; Julie was negligent, and her negligence was "a cause of her injuries."

¶2     On appeal, the Klingers argue that the circuit court was required, as a matter of law, to change one of the jury's causation answers to state that Masbruch's negligence was a cause of Julie's injuries.   We conclude that this argument must be rejected under the reasoning in *Powers v. Joint School Dist.*, 2 Wis. 2d 556, 87 N.W.2d 275 (1958), based on the evidence and the jury answers here.

---

[1] For ease of reference, we use first names to identify the Klingers individually, and we make no further reference to Masbruch's insurer because no issues in this appeal separate Masbruch and the insurer.

While on the topic of name usage, we note that at times both parties inappropriately use party designations rather than names for parties, contrary to WIS. STAT. RULE 809.19(1)(i) (2019-20).  In addition to violating the rule, these references diminish the persuasiveness of both sets of briefs by making them harder to follow.

Separately, all references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3      The Klingers separately argue that the circuit court should have granted their postverdict request for a new trial on liability based on the court's decision to admit a medical record into evidence at trial. We assume without deciding that it was error to admit the record and affirm because the assumed error was harmless.

¶4      The Klingers also argue that the circuit court should not have declined to instruct the jury that a driver who approaches an intersection has a duty to stop before entering the intersection when the driver has a yellow signal light unless the stop cannot be executed safely. We conclude that the circuit court did not erroneously exercise its discretion in declining to give the yellow-light instruction because the instruction on its face would have conflicted with the theory of the case that the Klingers placed before the jury, as the Klingers now concede by failing to address Masbruch's argument to that effect.

## BACKGROUND

¶5      Masbruch drove a pickup south toward an intersection that was controlled by a traffic light at the same time that Julie drove a full-sized sedan east toward the same intersection. The two vehicles collided. Masbruch testified that he entered the intersection on a green light traveling 25 miles per hour. Julie sustained injuries in the collision and testified at trial that she had no memory of the collision. The Klingers emphasized trial testimony given by two witnesses, Kimberly Wright and Jeffrey Miesen, both of whom testified that they heard Masbruch's pickup accelerate just before the collision. The Klingers also relied on Masbruch's trial testimony that his "last sight" before the collision was of "the green light," and that he did not see Julie's sedan before the collision.

¶6      We pause to clarify one aspect of the verdict answers on causation. While one verdict question asked whether Masbruch's "negligence [was] *a cause* of Julie Klinger's injuries" (emphasis added), the parties do not dispute that the jury was properly instructed as follows:  "Someone's negligence caused the injury if it was *a substantial factor* in producing the injury."  (Emphasis added.)  The causation issue, then, was whether Masbruch's negligence, as found by the jury, was "a substantial factor in producing" Julie's injuries.[2]

¶7      On appeal from circuit court rulings discussed below, the Klingers raise the three issues summarized above, which we now address in turn.

## DISCUSSION

### I.      REQUEST TO CHANGE CAUSATION VERDICT

¶8      The Klingers argue that the circuit court was required, as a matter of law, to change one jury verdict to state that Masbruch's negligence was a cause of Julie's injuries because, according to the Klingers, the only reasonable inference from the evidence at trial was that Masbruch failed to keep a proper lookout for hazards as he approached and entered the intersection.  We reject this argument based on the reasoning in the *Powers* case, our review of the evidence, and the nature of the jury answers.

---

[2] For this reason, we reject any argument that the Klingers may intend to make based on the proposition that the jury found that Masbruch's negligence was not, as the Klingers put it in their appellate briefing at one point, "'a cause' of" Julie's injuries.  The jury could have found that his negligence was a causative factor but not a "substantial" one.

4

### A. Legal Standards

¶9 A motion to change a verdict answer "challenges the sufficiency of the evidence to sustain the answer." ***Kovalic v. DEC Int'l, Inc.***, 161 Wis. 2d 863, 873 n.7, 469 N.W.2d 224 (Ct. App. 1991).

> No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

WIS. STAT. § 805.14(1).

¶10 Regarding our review of a motion to change a jury verdict,

> [a]ppellate courts do not upset a jury verdict if there is any credible evidence to support it. "Weighing testimony and evaluating credibility of witnesses are matters for the jury." In reviewing a jury verdict, "evidence will be viewed in the light most favorable to the verdict" and courts "search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach."

***K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.***, 2007 WI 70, ¶38, 301 Wis. 2d 109, 732 N.W.2d 792 (citations and quoted sources omitted). Further, the bar for the Klingers is yet higher here, because on motions after verdict the circuit court upheld the jury's challenged finding. *See **Morden v. Continental AG***, 2000 WI 51, ¶40, 235 Wis. 2d 325, 611 N.W.2d 659. We will not overturn the jury's verdict in such a case unless "there is such a complete failure of proof that the verdict must be based on speculation." ***Coryell v. Conn***, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979).

**B. Analysis**

¶11    The Klingers acknowledge, as they must, that the following general rule applies in Wisconsin negligence cases:  "there is nothing inconsistent or irregular in the form of a verdict" when a party is found negligent, "but such negligence is not [found to be] causal of the injuries."  *See Fondell v. Lucky Stores, Inc.*, 85 Wis. 2d 220, 228, 231-32, 270 N.W.2d 205 (1978) (concluding that there was sufficient evidence to support a jury finding of negligence by supermarket related to customer's fall in area where bottle of liquid cleaner had broken, but also that the jury was "equally free to find that the plaintiff's evidence failed to meet the burden of proof as to causation" of the fall resulting from that negligence).  In other words, "the question of causation is usually one of fact for the jury."  *Id.* at 230.  The Klingers argue, however, that this not the usual case.  They contend that it is the type of case contemplated in *Fondell* in which a reasonable jury "could not differ as to a party's conduct being a substantial factor to the accident."  *See id.*

¶12    More specifically, the Klingers contend that case law separate from *Fondell* establishes what might be called a per se inadequate-lookout rule in Wisconsin negligence law governing the issue of causation that they submit always qualifies as an exception to the general rule contemplated in *Fondell*. Under such a per se inadequate-lookout rule, according to the Klingers, whenever there is a vehicle collision at an intersection and one "party admits his [or her] failure to lookout" for traffic hazards in approaching and entering the intersection, then the causation element of negligence is always established as a matter of law.[3]

---

[3] For purposes of this discussion, we assume without deciding that Masbruch in essence admitted to failing to keep a proper lookout.

The Klingers argue that such a per se inadequate-lookout rule was established in a trio of opinions issued by our supreme court in the 1950s. *See Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 55 N.W.2d 29 (1952); *Oelke v. Earle*, 271 Wis. 479, 74 N.W.2d 336 (1956); and *Crye v. Mueller*, 7 Wis. 2d 182, 96 N.W.2d 520 (1959).

¶13    It is true that these cases establish that a party's failure to maintain a proper lookout in an intersection collision case can, depending on the evidence, constitute a substantial factor in causing a collision as a matter of law. But we now discuss an additional opinion of our supreme court, *Powers*, that more specifically and directly undermines the Klingers' argument, based on the particular evidence before the jury in this case and the jury's answers on the special verdict.

¶14    In *Powers*, a driver was slowing a school bus near a school, and was about to bring it to a stop, when the rear wheels of the bus ran over a child. *Powers*, 2 Wis. 2d at 557, 559. Just before the accident, the child had been at or near the rear of a group of small children who were running next to the bus. *Id.* at 557, 560. The child "somehow slipped, tripped or was pushed, and fell partly under the bus." *Id.* The jury found that the driver was negligent for failing to maintain a proper lookout, but also found that the driver's "negligence was not a substantial factor in producing the accident." *Id.*

¶15    In arguing on appeal that the jury's causation answer must be changed, Powers contended "that there is no credible evidence to sustain the jury's finding that the negligence of the bus driver … with respect to lookout was not a substantial factor in causing the injury." *Id.* at 558. Our supreme court summarized with approval the circuit court's determinations that there was a

reasonable evidentiary basis for the jury to find both that: (1) the driver was negligent for "not keeping a lookout through the glass door to his right, which would have enabled him to see the children who were abreast of the door"; and (2) "such negligence was not a substantial factor in causing [the child's] injury." *Id.* at 560. The court made the following observation regarding the causation finding:

> [T]he jury could properly have concluded that the children at the front of the pack reached a point beside the glass door, where [the driver] could have seen them had he looked to his right, only such a short time before he actually stopped, that if he had stopped as soon as possible after he should have seen the children, he might still have run over [the child].

*Id.* The supreme court pointed out that the driver had a duty while slowing the bus in a school yard to look in multiple directions (not only at his mirror for hazards that might be at or near the one side where the accident occurred) and that "[s]ome allowance could properly have been made also for reaction time on his part." *Id.* at 560-61.

¶16 Notably, the *Powers* court observed, using terms similar to those that the court would later use in *Fondell* for the same concept: "While negligence in failing to keep a proper lookout is usually causal, it is not always so, and this is one of the relatively rare cases where the jury could properly say it was not causal." *Powers*, 2 Wis. 2d at 561.

¶17 *Powers* remains good law and its specific reasoning applies here. The supreme court concluded that the jury in *Powers* could reasonably find that the bus driver was negligent in failing to keep a proper lookout but could also reasonably find that the bus would have run over the child even if the driver had not been negligent in this regard. In the same way, the jury here could reasonably

find that Masbruch was negligent in failing to keep a proper lookout but could also reasonably find that the collision would have occurred even if he had not been negligent in this regard. In considering causation, the jury may have placed significant weight on evidence that could have supported reasonable inferences that Julie was on her phone shortly before the collision and that she ran a red light.

¶18    The Klingers fail to identify a statement in *Pfeifer*, *Oelke*, or *Crye* that cannot be reconciled with the application of *Powers* to the circumstances here, as we now explain.

¶19    In making their first point on this topic, the Klingers emphasize the following observation by the court in *Crye*: the obligation of every motorist approaching an intersection to keep a proper lookout does not disappear "even though the dominant cause of an ensuing collision be the conduct of the other driver." *Crye*, 7 Wis. 2d at 189. But this merely means that motorists approaching intersections always have the duty to keep a proper lookout and that they are not relieved of that duty merely because others are negligent. *Crye* certainly does not stand for the proposition advanced by the Klingers, namely, that in any case in which there is a failure to keep a proper lookout, causality is always established as a matter of law.

¶20    The Klingers' reliance on *Oelke* is also misplaced. Notably, the evidence in that case included the presence of a "shack" located near an intersection, and the court strongly implies that any approaching driver had an obvious need to take the shack fully into account due to its obstruction of sight lines. *See Oelke v. Earle*, 271 Wis. at 482-84. Based on the particular evidence in that case, the court determined that a driver's admitted failure to keep a proper lookout was in that case "a substantial factor in producing" a collision. *Id.* As in

*Crye*, the court in *Oelke* does not announce a per se rule linking all failures to keep a proper lookout with causation of all collisions.

¶21 The Klingers emphasize the observation of our supreme court in *Powers* that, as quoted above, it will be "relatively rare" in intersection collision cases for both of the following to be true: (1) there is a supported finding of negligence for failing to keep a proper lookout; and (2) that negligent act should not be deemed as a matter of law to have caused the accident.

¶22 The problem with the Klingers' argument is that they fail to explain why this case does not belong in the basket of "relatively rare" cases broadly contemplated in both *Fondell* and *Powers*—however common or rare such a circumstance may be among all negligence cases. The Klingers face an uphill climb in even attempting to argue that this case could not belong in that basket, in light of facts that the jury could reasonably have found supporting inferences that Julie was on her phone shortly before the collision and that she ran a red light.[4]

_____

[4] The Klingers briefly raise as a purportedly separate issue, or sub-issue, the following argument: a new trial is required because the jury answers were inconsistent in finding Masbruch negligent but also finding that his negligence was not causative. *See Westfall v. Kottke*, 110 Wis. 2d 86, 100, 328 N.W.2d 481 (1983) (when jury verdict contains an "inconsistency on the face of the verdict" that is "irreconcilable," a new trial is generally required). But the Klingers fail to advance any rationale under this theory that we have not already resolved against them based on their concessions and our discussion of *Fondell v. Lucky Stores, Inc.*, 85 Wis. 2d 220, 270 N.W.2d 205 (1978), and *Powers v. Joint School Dist.*, 2 Wis. 2d 556, 87 N.W.2d 275 (1958). In passing, the Klingers assert that questions that the jury posed to the circuit court during its deliberations "demonstrate[d] juror confusion" and that this purported confusion supports the Klingers' inconsistent verdict argument, but they fail to develop a supported argument to that effect and we discuss that topic no further.

Separately, before leaving this issue, we note with disapproval one statement in the portion of the Klingers' brief that addresses this issue. The brief states: "When the trial court could not find a suitable rationale, it strained to uphold the jury verdict." We detect no basis in the record for this challenge to the integrity of the circuit court judge. We remind counsel that substituting unsupported allegations of bias by circuit courts for proper legal analysis is unwelcome and risks undermining the credibility of counsel.

That is, as noted above, the jury had a reasonable evidentiary basis to determine that any assumed failure to keep proper lookout was not causative, and this was a permissible result under the reasoning in *Powers*.

## II.    ADMISSION OF MEDICAL RECORD

¶23    The Klingers argue that the circuit court should have granted their postverdict request for a new trial on liability based on the court's decision to admit into evidence a medical record described below.  We assume without deciding that it was error to admit this record and conclude that the assumed error was harmless.[5]

¶24    "Pursuant to WIS. STAT. § 805.18(2), the improper admission of evidence is not grounds for … granting a new trial unless, after an examination of the entire action, it shall appear that the error 'affected the substantial rights of the party' seeking to reverse the judgment or secure a new trial."  *Weborg v. Jenny*, 2012 WI 67, ¶68, 341 Wis. 2d 668, 816 N.W.2d 191  "In order for an error to affect the substantial rights of a party within the meaning of … § 805.18(2), 'there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue.'"  *Weborg*, 341 Wis. 2d 668, ¶68 (quoted source omitted).  "'A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'"  *Id.* (quoted source omitted).

¶25    Our supreme court has explained:

---

[5] Our assumption of error includes both aspects of the medical record that the Klingers argue were improperly admitted:  (1) statements that the medical record attributes to Julie and (2) statements that may be construed as being attributed to other, unidentified, persons.  The assumed error was harmless regardless of how the medical record was construed in this respect.

> Most errors are truly harmless.… [However,] when error is committed, a court should be sure that the error did not affect the result or had only a slight effect.… When it is clear that error has been committed, we should be sure that the error did not work an injustice. The only reasonable test to assure this result is to hold that, where error is present, the reviewing court must set aside the verdict unless it is sure that the error did not influence the jury or had such slight effect as to be *de minimus*.

*State v. Dyess*, 124 Wis. 2d 525, 541-42, 370 N.W.2d 222 (1985).

¶26 Both sides here inadequately cite to the record in addressing the details of how the jury was exposed to the evidence at issue and in what contexts. However, our own review of the record reveals that the jury was presented with evidence that we now describe. The evidence consisted of the following portion of emergency room "Consult Notes" from Julie's post-collision treatment:

> The patient states that she was driving through the intersection. The patient should have stopped at the red light but did not and was hit broadside directly over driver's door by a full-size pickup truck going about 30 mile/hour. The patient was belted. Had no air-bag deployment. The patient did state that she hit her head on something hard.

¶27 We assume without deciding that it was error for the circuit court to permit the jury to be exposed to this evidence, but we conclude that the assumed error did not influence the jury. We agree with each of the following three related determinations made by the circuit court in addressing postverdict motions, and we conclude that these three factors together establish that this evidence could not have made a difference to the challenged result at trial.

¶28 First, the jury heard extensive, direct evidence and argument on the following questions: Which driver had a green light and which driver had a red light as they approached and then entered the intersection? The Klingers give us

no good reason to think that jurors would have ignored the much more direct evidence and instead relied on the medical record references to decide these issues.

¶29     Second, the medical record at issue was, as the circuit court characterized it, a mere "snippet." Elaborating on that point, this contested evidence is on its face ambiguous as to whether Julie told anyone that she had run a red light or instead whether that allegation came from another unknown source of unknown reliability (as the Klingers themselves now repeatedly point out, some of these statements were by "unknown declarants"). Put differently, this evidence does not have nearly the weight that might reasonably have been attributed to a hypothetical witness testifying that Julie told the witness after the collision that she had in fact run a red light. Further, on a related note, our review shows that the references that the parties made to this evidence at trial were somewhat scattered and not detailed.

¶30     Third, Julie's counsel on multiple occasions during trial emphasized other evidence that would have supported a finding that Julie, from the time of the collision, had no memory of the circumstances of the collision. Therefore, the argument to the jury proceeded, it could not be true that Julie told anyone during the aftermath of the collision that she had run a red light. In their briefing on appeal, the Klingers themselves emphasize at length the extensive evidence presented to the jury that would have supported a finding that Julie had no memory of the circumstances of the collision that she could have related to anyone.

¶31     In sum, this ambiguous, relatively indirect evidence that was presented in somewhat scattered fashion, and that was repeatedly countered with

evidence undermining an adverse inference for Julie, could not have made a difference to the challenged result at trial.

## III.  YELLOW-LIGHT INSTRUCTION

¶32   The Klingers asked the circuit court to give Civil Jury Instruction 1192 ("the yellow-light instruction"), which provides:

> DUTY     OF     OPERATOR     APPROACHING INTERSECTION WHEN AMBER LIGHT SHOWS
>
> A safety statute provides that an operator facing a yellow signal shown with or following a green light[] shall stop before entering the intersection unless so close to it that a stop cannot be made in safety.
>
> If you find that the yellow or amber light, which signifies caution, was showing before (operator) entered the intersection, then (operator) was required to stop unless (he) (she) was so close to the traffic signal that a stop could not be made in safety.

WIS JI—CIVIL 1192.  The circuit court denied the request for the yellow-light instruction on the ground that neither party "is claiming that the other had a yellow light and did not stop," and that the court did not "even think that the inference can be made" from the evidence.

¶33   The Klingers argue that the circuit court should have granted their postverdict request for a new trial on liability based on the court's decision not to give the yellow-light instruction.  We conclude that the circuit court did not erroneously exercise its discretion in making this decision based on circumstances that we describe below.

¶34   "A circuit court has broad discretion to craft jury instructions based upon the facts and circumstances of the case" "in a way that fully and fairly informs the jury of the rules of law applicable to the case and that assists the jury

14

in making a reasonable analysis of the evidence." *Smith v. Goshaw*, 2019 WI App 23, ¶9, 387 Wis. 2d 620, 928 N.W.2d 619. "Whether the circuit court erred by stating the law incorrectly or in a misleading manner is a question of law this court reviews de novo." *Id.*

¶35 The Klingers do not contend that the circuit court misapplied any legal principle in declining to give the yellow-light instruction. Instead, they contend that the court erroneously exercised its discretion by unjustifiably taking from the jury the issue of whether Masbruch was negligent in failing to stop on yellow, which could have influenced the jury to change the cause verdict.

¶36 We resolve this issue based on arguments by Masbruch that are consistent with part of the circuit court's reasoning for its challenged decision and that rely on the following two additional, related pieces of background.

¶37 First, Masbruch points out that, consistent with the circuit court's observation that neither party "is claiming that the other had a yellow light and did not stop," the Klingers consented to the jury receiving the following instruction ("the both-claim-green instruction"):

> **1190.5 PLAINTIFF AND DEFENDANT EACH CLAIMS GREEN LIGHT IN THEIR FAVOR**
>
> Both parties claim that the green traffic light (or "Go" signal) was facing the drivers as they proceeded to cross the intersection in question. It was a physical impossibility for this to happen, in the absence of evidence that the lights were not in good working order. It is for you to determine which driver the green light was facing and which driver, at that same time, the red light was facing as each driver proceeded into the intersection.

Masbruch's point is that it would have been confusing to give the jury two seemingly contradictory propositions: (1) from the yellow-light instruction, that

there was evidence of a potential yellow light violation; and (2) from the both-claim-green instruction, that the parties were in agreement that one of them had a green light and the other had a red light (*i.e.*, that neither had a yellow light) at a respective time before the collision when each could have safely stopped if a yellow light was showing to that driver.

¶38 Second, Masbruch points out that, consistent with the both-claim-green instruction, during arguments on postverdict motions, counsel for the Klingers acknowledged to the circuit court that there had not "ever" been any "dispute" in the case that, as the court put it in characterizing expert testimony in the case, "given the layout of the intersection, … it's an impossibility for there to be anything other than a red and green light at the time of the collision."

¶39 In sum, Masbruch argues that it could not have been an erroneous exercise of discretion for the circuit court to decline to give an instruction that would have been directly contrary to positions taken by the Klingers at trial, including the position that entry to the intersection on yellow was "an impossibility"—risking justifiable jury confusion.

¶40 Faced with this argument on appeal, the Klingers fail to address it in either their opening brief or their reply brief, which we treat as a concession. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (Appellant's failure to respond in reply brief to argument made in response brief may be taken as concession.). If the Klingers could have some argument that the yellow-light instruction would not have conflicted with the both-claim-green instruction and the positions of the Klingers in support of that

16

instruction, we would have to attempt to develop such argument. We cannot do this without abandoning our neutral role.[6]

## CONCLUSION

¶41 For all of these reasons, we affirm the circuit court order entered in favor of John Masbruch and Wisconsin Mutual Insurance Company based on a jury verdict in favor of Masbruch and the court's denial of postverdict motions filed by the Klingers.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] We need not address the waiver arguments on this issue raised by Masbruch and addressed by the Klingers, given the basis for our resolution of this issue explained in the text.